OPINION
{¶ 1} Attorney Jon Paul Rion was held in contempt after a hearing in the Clark County Court of Common Pleas. The court imposed a fine of $500 as a sanction. Rion appeals from the contempt judgment, arguing that the court violated his constitutional rights and that there was insufficient evidence to prove contempt beyond a reasonable doubt. For the following *Page 2 
reasons, the judgment of the trial court will be reversed.
 {¶ 2} The procedural history of the contempt proceedings is as follows.
 {¶ 3} Rion represented Ryan Daly on two counts of vehicular homicide arising from a collision in which Daly's passenger was killed. Both counts included an allegation that Daly was driving under a license suspension issued under "any provision" of the Ohio Revised Code, which enhanced the penalties for the offenses. An agreement was reached between Daly and the state that he would plead no contest to the charges, while reserving, with his not guilty plea, his defense to the driving-under-suspension issue.
 {¶ 4} During a pre-trial conference, the proposed agreement was discussed with the court. According to the court's February 3, 2006 entry, it "specifically recalled] telling defense counsel that it would agree to continue the defendant's bond pending the trial on the specification." Rion and the prosecutor, Andrew Wilson, apparently understood that, if Daly pled no contest, Daly would be allowed to stay out of jail on bond pending a pre-sentence investigation.
 {¶ 5} The trial court evidently began to doubt whether a hybrid plea — no contest to the charges, but not guilty on the suspended driver's license issue — was possible. A new arrangement was worked out. Under the new arrangement, Daly would waive his right to a jury trial and stipulate to all elements of the offenses, except driving under a license suspension pursuant to "any provision" of the Ohio Revised Code. The trial court would hear evidence and adjudicate Daly's guilt on that issue. According to Rion's affidavit, he believed that he had an understanding with the trial court that, as part of the arrangement, his client would remain out on bond pending the pre-sentence investigation. In the prosecutor's affidavit, Wilson *Page 3 
acknowledges that he had an understanding with Rion that, under the new arrangement, Daly could remain out of jail on bond pending the pre-sentence investigation, but Wilson does not aver that this subject was discussed with the trial court in connection with the new arrangement.
 {¶ 6} A bench trial was held on January 12 and 13, 2006. About an hour after the conclusion of the taking of evidence, the trial court announced its verdict, finding Daly guilty as charged on both counts. The court further announced that Daly would be held without bond pending disposition. In response, Rion requested permission to approach the bench, but the trial judge concluded the proceedings without permitting Rion to speak.
 {¶ 7} According to Rion's testimony at the contempt hearing, he immediately spoke with Wilson and said, "Andy, this isn't right." The prosecutor responded, "I know. Let's go talk to the Judge." The two agreed that the agreement had provided that Daly would remain out on bond until sentencing. Rion and Wilson went to the judge's chambers to discuss the matter with the trial judge, Judge Rastatter, but the trial judge would not speak with them. Wilson then suggested that they try again on Monday. On Tuesday, the two again attempted to talk with the trial judge, but the judge again refused to speak with them.
 {¶ 8} On January 18, 2006, Rion filed two motions — a "Post Conviction Motion" and a "Motion to Reinstate Bond" — to which he attached affidavits from himself, Daly, and Wilson. Rion's memorandum in support of these motions stated, in pertinent part:
 {¶ 9} "BRANCH I.
 {¶ 10} "It was with the specific condition of Defendant waiving a jury trial that it was agreed upon between the Prosecuting attorney, defense counsel and this Court, that Defendant would remain out on bond pending a pre-sentence investigation. Defense counsel has conferred *Page 4 
with the Prosecuting attorney with regard to this matter and he has confirmed this agreement that was entered into with the Court prior to Mr. Daly choosing to waive his right to a jury. The Court flagrantly abused its discretion in this case by misleading the Defense counsel and Prosecution that Mr. Daly would not be held in jail pending the results of the pre-sentence investigation.
 {¶ 11} "* * *
 {¶ 12} "Mr. Daly specifically waived his right to a jury trial in this case based on the fact that the Court agreed to not hold him in jail pending the pre-sentence investigation, assuming that he would be found guilty. At the conclusion of the Court's reading of the verdict, the Court immediately left the bench and feigned that it had no memory of the agreement entered into between the State, Defense Counsel, and the Court. Prosecuting Attorney on behalf of the state, Andrew Wilson, specifically recalled the agreement during discussions with defense counsel following this `radical' act by the Court.
 {¶ 13} "Had it not been for the agreement to not revoke the bond pending a pre-sentence investigation, Mr. Daly's right to a jury trial would not have been waived.
 {¶ 14} "BRANCH II.
 {¶ 15} "The Court deprived Mr. Daly of his Sixth Amendment right to a jury trial by misleading him into waiving his right to a jury based on the tripartite agreement between the State, Defense Counsel and the Court. The agreement was specific in that if a guilty verdict was returned at the bench trial that Mr. Daly would not be remanded to the county j ail pending a pre-sentence investigation.
 {¶ 16} "* * * *Page 5 
 {¶ 17} "In this case Mr. Daly was prevented from ever possessing the ability to make a knowing and intelligent waiver of his right to a jury trial because the court misled defense counsel into believing that it would follow through with its agreement to allow him to remain out on bond pending a pre-sentence investigation. Because a right to a jury trial is a constitutional right (see e.g. Duncan v. Louisiana,391 U.S. 145, (1968)), which may be waived by a defendant in favor of a bench trial, Patton v. United States, 281 U.S. 276 (1930), the waiver must be voluntary and knowing. Brady v. United States, 397 U.S. 742, 748 (1970). No knowing and voluntary waiver existed in this case, and therefore it is respectfully requested that this case be dismissed based on a violation of Mr. Daly's Sixth Amendment right to a jury trial.
 {¶ 18} "WHEREFORE, for the foregoing reasons, it is respectfully requested that this Court grant Mr. Daly a new trial or in the alternative dismiss this case."
 {¶ 19} On February 3, 2006, the day set for the sentencing hearing, the trial court overruled the "post-conviction" motions. The trial court specifically rejected Rion's claim that the trial court had ever agreed that Daly could remain out of jail on bond pending the pre-sentence investigation, once his client had been adjudicated guilty of a felony. The trial court then found Rion in direct contempt by reason of the post-conviction motions and memoranda he had filed. The court imposed as a sanction a $500 fine "to be paid to the Clark County Clerk's Office before the end of business today." In order to allow a "cooling off period," the trial court rescheduled Daly's disposition for February 10, 2006.
 {¶ 20} Rion timely paid the fine with a notice, filed in the trial court, "that the $500.00 fine is hereby being paid without prejudice, subject to any determination of an appellate court." On February 27, 2006, Rion appealed from the direct contempt citation. *Page 6 
 {¶ 21} On review, we reversed the trial court's contempt order, holding that the trial court erred by punishing Rion's conduct as a direct contempt, in a summary proceeding, without notice and the opportunity to be heard, and without the benefit of a neutral and detached judicial officer. State v. Daly, Clark App. No. 06-CA-20,2006-Ohio-6818. We remanded the action to the trial court for further proceedings, noting that the issue of Rion's contempt should be assigned to another judge. Id. at ¶ 53.
 {¶ 22} On remand, the administrative judge of the Clark County common pleas court assigned the contempt matter to Judge Richard Carey. On January 26, 2007, the trial court issued a show cause order, ordering Rion to "show cause why he should not be punished as for Contempt of Court for the language used in his Memorandum in Support of two Motions filed before the Trial Court on January 18, 2006, to-wit: a `post conviction motion' and a `motion to reinstate bond.'" The court set a hearing on the matter for February 14, 2007. The hearing was ultimately held on March 13, 2007.
 {¶ 23} On March 22, 2007, Judge Carey found Rion's conduct to be contemptuous. In holding Rion in contempt, Judge Carey construed the allegations as "a direct challenge to the dignity of the court." He stated, in part:
 {¶ 24} "The troublesome nature of Attorney Rion's assertions is that it casts Judge Rastatter's handling of this case as though it were intentional malfeasance. Attorney Rion has afforded no room for the more likely explanation of misunderstanding, miscommunication, or even mistake of fact. His was, rather, an uncompromising indictment that Judge Rastatter had acted intentionally to deceive and to compromise the constitutional rights of a defendant appearing before his Court. *Page 7 
 {¶ 25} "It might be argued that this accusation, however impolite, did not disrupt the judicial process in this case and therefore should not be considered to be a contempt of Court. However, contempt of Court also includes any conduct which brings the administration of justice into disrespect or which tends to embarrass the Court. An accusation that the Court is intentionally acting to deceive and/or be unfair to a party appearing before it subjects that Court to public reproach, unnecessarily brings the administration of justice into disrespect, and serves to embarrass the Court. There are, after all, three unforgivable sins that can be committed by a judge, to-wit: that a judge be corrupt; that a judge be incompetent; and that a judge intentionally act unfairly. Attorney Rion has improvidently accused Judge Rastatter of the latter; and to seal his position, accused Judge Rastatter of lying when Judge Rastatter conceded no memory of any promise concerning bond. Unfortunately, this is nothing short of a direct challenge to the dignity of the Court.
 {¶ 26} "Attorney Freund suggests that this notwithstanding, attorney Rion did not have the `intent' to be contemptuous of the Court; but was rather zealously representing his client. Indeed, Attorney Rion echoed this sentiment and added that he felt that he had no choice but to file these motions with this accusation and this language.
 {¶ 27} "As to this issue, the Court does not doubt Attorney Rion's sincerity when he contends that he truly expected his client, defendant Daly, to continue to be released on bond. This, indeed, is supported by his immediate reaction to Judge Rastatter's revocation of bond at the conclusion of the trial. This Court also does not doubt that Attorney Rion represented his belief to defendant Daly and that this, perhaps, was a significant factor in defendant Daly's considerations to waive his right to a jury trial. *Page 8 
 {¶ 28} "However, there is a huge leap between pleading a serious misunderstanding of the plea negotiation by the defendant — the true concern underlying the motions in question-and accusing the Court of `flagrant' misconduct. Attorney Rion made this leap. It was not necessary to his cause. It is not enough to now claim that he did not intend to show contempt for the Court.
 {¶ 29} "But, it might be argued, what if Attorney Rion's allegation was true? What if Judge Rastatter acted intentionally? What of the contempt then? Very well.
 {¶ 30} "What evidence does Attorney Rion present to prove that Judge Rastatter acted intentionally, radically, flagrantly, and with the specific purpose to dishonor his agreement concerning the bond? There is no written plea negotiation form. The record is completely devoid of any reference concerning bond. Even the affidavit of Prosecutor Wilson can only address his understanding of what may have transpired during the first plea negotiation — which was later rejected by the Court. What remains is the recollection of Attorney Rion versus the recollection of Judge Rastatter — hardly enough to warrant the publication of an indictment against the Court.
 {¶ 31} "Ours is a justice system founded not in force, but in trust. Its cornerstone is the public's confidence in the Court being fair, impartial, and unbiased. Indeed, it is a challenge to speak much about our justice system without employing those oft used words: `fair and impartial.' Public confidence is absolutely essential to the administration of justice. Indeed the code of professional responsibility is replete with considerations motivated by the overriding goal to maintain public confidence in our justice system. Consequently, attorneys are directed to show proper respect in public for the judiciary and the judiciary's decisions. (See e.g., Ethical *Page 9 
Consideration 7-22 of the Code of Professional Responsibility). Attorney Rion, unfortunately and to the contrary, has acted to bring dishonor upon the Court.
 {¶ 32} "In summary, the Court, after due consideration, believes that there was a miscommunication and misunderstanding between Judge Rastatter and Attorney Jon Paul Rion concerning the resolution of the criminal case against defendant Daly. Attorney Rion and defendant Daly believed that defendant Daly would remain on bond pending the final disposition. Judge Rastatter did not share this position. The specifics of this resolution were not reduced to writing or otherwise perpetuated by the record. Instead of allowing for the possibility of this miscommunication or misunderstanding or the possibility of mistake, Attorney Jon Paul Rion published an accusation of deliberate misconduct and disingenuous posturing on behalf of the Court. The substance of this accusation cannot be proven. This accusation has brought reproach upon the Court. Insofar as this accusation was published five days after the fact, the Court finds that it was made with due deliberation by Attorney Rion. As such, it is contemptuous conduct for which Attorney Rion is subject to punishment."
 {¶ 33} Judge Carey assessed a fine of $500 and ordered Rion to pay the fine within seven days.
 {¶ 34} Rion appeals from the finding of indirect criminal contempt, asserting that the trial court denied him due process of law when it found him guilty of contempt. Rion raises three issues in his assignment of error: (1) that the court did not employ an adversarial process; (2) that the trial court denied him basic constitutional rights, including the presumption of innocence, proof beyond a reasonable doubt, and the privilege against self-incrimination; and (3) that the contempt finding was based on insufficient evidence. The crux of Rion's appeal is that *Page 10 
the court employed an improper procedure for addressing indirect, criminal contempt and that the evidence did not support a finding of contempt.
 {¶ 35} We begin with Rion's arguments that the contempt hearing was procedurally defective.
 {¶ 36} In indirect contempt cases, "constitutional due process requires that a defendant charged with contempt * * * be advised of the charges against him, have a reasonable opportunity to meet those charges by way of a defense or explanation, have the right to be represented by counsel, and have an opportunity to testify and call other witnesses in his behalf." Pirtle v. Pirtle, Montgomery App. No. 18613, 2001-Ohio-1539; Non-Employees of Chateau Estates Resident Assn. v.Chateau Estates, Ltd., Clark App. Nos. 2005-CA-75, 2005-CA-90, 2005-CA-91, 2005-CA-101, 2005-CA-116, 2007-Ohio-319, ¶ 63. Where the accusing judge is "too embroiled in the controversy to act as a neutral and detached fact finder," the contempt charge should be referred to another judge. State v. Dean, Clark App. Nos. 06-CA-61, 06-CA-63,2007-Ohio-1031.
 {¶ 37} It is well-established that "many of the significant constitutional safeguards required in criminal trials are also required in criminal contempt proceedings." State v. Kilbane (1980),61 Ohio St.2d 201, 205, 400 N.E.2d 386. Guilt must be proven beyond a reasonable doubt. Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250,416 N.E.2d 610. The accused is entitled to a presumption of innocence and has the right to invoke the privilege against self-incrimination.Gompers v. Buck's Stove Range Co. (1911), 221 U.S. 418, 444,31 S.Ct. 492, 55 L.Ed. 797; Brown, 64 Ohio St.2d at 252. *Page 11 
 {¶ 38} Rion has asserted as error that the state did not prosecute his contempt and, in fact, there was no prosecutor present at the contempt hearing. During the hearing, Judge Carey noted that there was no question about what Rion had written, which was the basis for the contempt hearing, and thus no prosecutor was needed. We agree with Judge Carey that, because the charge of contempt was based solely on written submissions to the court, of which the court could take judicial notice, the lack of a designated prosecutor was not fatal to the contempt charge.
 {¶ 39} Rion also claims that Judge Carey improperly accepted Judge Rastatter's findings of fact in his entry and thereby required Rion to rebut a presumption that he had committed contempt. Rion argues that the court thereby shifted the burden of proof and denied him the presumption of innocence and the right not to testify against himself. He further asserts that Judge Carey acted as both prosecutor and judge by presenting his own unsworn recitation of the facts. Rion cites to the following exchange during the contempt hearing:
 {¶ 40} Defense Counsel: "* * * Just for the record, respectfully note that I object to having the burden of going forward with the evidence and also object to the idea that there is a presumption — any type of a presumption of contempt. I object to that because I don't think that — There is no finding here of any presumption of contempt. There is a required proof of showing that his conduct was contemptuous, so I don't know. Is the Court of the opinion that there is a presumption of contempt here?
 {¶ 41} The Court: "I don't know that that's the right term. Presumption. All I know is that there was enough to warrant the citation for contempt, and that citation was issued. *Page 12 
 {¶ 42} "Now, as part of your argument, if you obviously want to say this was not contemptuous, that's your opportunity right now and that's also before this Court. I guess personally right now I am an open mind here. I want to know your position as to whether this conduct here constituted contemptuous behavior.
 {¶ 43} "Judge Rastatter at some point indicated his opinion that he felt it did. The Court of Appeals didn't really rule on that. They just said it was not direct contempt and sent it back for further proceedings.
 {¶ 44} "That's where we are right now and if you want to argue that this in no way, shape or form was contemptuous, it's an open forum for that argument; and I guess to that extent I would invite you to make those arguments and proceed that this point."
 {¶ 45} Rion also objects to Judge Carey's lengthy introduction to the proceeding and his statements that Rion must demonstrate a lack of contempt, such as: "Now what's before the Court is the opportunity for Mr. Rion to be heard so that he can show the Court either one, that this was not contemptuous; or two, that he should not be punished for it." Upon review of the transcript as a whole, we do not find that Judge Carey transferred the burden of proof to Rion, denied him a presumption of innocence, or acted as the prosecutor. As stated above, Judge Carey indicated to Rion that he had the basis for the contempt charge — Rion's motions and memoranda — in the record. He further indicated that he had an open mind as to whether those documents constituted contempt of court, and he invited argument on that matter. Rion could have chosen not to testify and to let his motions and memoranda speak for themselves. Moreover, although Judge Carey referenced Judge Rastatter's *Page 13 
conclusions in his introduction to the contempt proceeding and indicated that the hearing was an opportunity for Rion to present his arguments, we find that Judge Carey's approach in this case — where the contempt charge was based on a written submission to the court that was in the record — was not unreasonable.
 {¶ 46} To the extent that Judge Carey credited the unsworn findings of Judge Rastatter, however, he should not have done so. Rion's motions and memoranda made factual allegations against Judge Rastatter, which Rion testified were truthful. Because Judge Rastatter did not testify to the contrary, there was no evidence as to Judge Rastatter's version of the underlying events. Considering that there was no prosecutor for the contempt charge, it is understandable that Judge Rastatter did not testify. However, if Judge Rastatter wished to refute those accusations during the contempt proceeding, he was required to do so under oath and to subject himself to cross-examination.
 {¶ 47} We now turn to Rion's argument that the state failed to present sufficient evidence to support his conviction for contempt. Although Rion argues that the state failed to present sufficient evidence to support his conviction, he has implicitly also asserted that the contempt finding was against the manifest weight of the evidence.
 {¶ 48} When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v.Dennis, 79 Ohio St.3d 421, 430, 1997-Ohio-372, 683 N.E.2d 1096, citingJackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d. 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds *Page 14 
could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 49} In contrast, when a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin,20 Ohio App.3d at 175.
 {¶ 50} Rion asserts that there was no evidence that he "intended to defy the court." He argues that the "effective administration of justice requires that attorneys be able to zealously represent their clients without the fear of being found in contempt," and that, although he used "argumentative language," he did not intend to disrespect the court but, rather, to zealously advocate for his client. In sum, Rion argues that his conduct "did not cross the line from vigorous advocacy to behavior that obstructed the *Page 15 
efficient administration of justice."
 {¶ 51} Contempt of court consists of conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions.Windham Bank v. Tomaszczyk (1971), 27 Ohio St.2d 55, 271 N.E.2d 815, paragraph one of the syllabus; Petition of Green (1961),172 Ohio St. 269, 175 N.E.2d 59, reversed on other grounds, (1962) 369 U.S. 689,82 S.Ct. 1114, 8 L.Ed.2d 198. "Criminal contempt is generally described as an offense against the dignity or process of the court. State v.Kilbane (1980), 61 Ohio St.2d 201, 204-205, 400 N.E.2d 386."Highland Square Mgt., Inc. v. Willis Linnen Co., L.P.A., Summit App. Nos. 21234, 21243, 2003-Ohio-2630, ¶ 10. R.C. 2705.02, which sets forth acts that are considered to constitute contempt of the court, includes "[m]isbehavior of an officer of the court in the performance of official duties." R.C. 2705.02(B). As noted by Rion, in cases of criminal indirect contempt, the accused must be shown to have intended to engage in contumacious conduct. See Midland Steel Prod. Co. v. Internatl.U.A.W. Local 486 (1991), 61 Ohio St.3d 121, 573 N.E.2d 98, paragraph two of the syllabus ("In cases of criminal, indirect contempt, it must be shown that the alleged contemnor intended to defy the court."). Intent may be determined based on a totality of the circumstances. State v.Mulligan, Montgomery App. No. 19359, 2003-Ohio-782, ¶ 35. "[A] person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." Id., quoting In re Purola (1991),73 Ohio App.3d 306, 312, 596 N.E.2d 1140; In re Olivito, Mahoning App. No. 04 MA 42,2005-Ohio-2701 ("A contemnor is presumed to intend the reasonable, natural, and probable consequences of his acts."); State v. Local Union5760, United Steelworkers *Page 16 of America (1961), 172 Ohio St. 75, 88, 173 N.E.2d 331 (intent to commit contempt may be deduced from circumstances attending the act).
 {¶ 52} The evidence in support of the trial court's finding that Rion had committed criminal contempt consisted of the motions and memoranda filed by Rion in response to Judge Rastatter's decision not to continue Daly's bond pending sentencing. In his memoranda, Rion stated that the court had "flagrantly abused its discretion in this case by misleading the Defense counsel and Prosecution that Mr. Daly would not be held in jail pending the results of the pre-sentence investigation." Rion accused the trial court of "feign[ing] that it had no memory of the agreement entered into between the State, Defense Counsel, and the Court." Rion further stated that the court had "misled" Daly into waiving his right to a jury and "misled defense counsel into believing that it would follow through with its agreement to allow [Daly] to remain out on bond pending a pre-sentence investigation."
 {¶ 53} We disagree with Rion that the evidence before the court was legally insufficient to constitute contempt. Construing the memoranda and motions in favor of the prosecution in the contempt hearing, the accusations in Rion's motions and memoranda could be reasonably deemed personally insulting to the court, and they implied improper conduct by the judge. At best, the allegations cast the court in an unpleasant light. We agree with the trial court that contumacious conduct may consist of embarrassing the court and impugning the court's integrity. Rion's intent to embarrass or impugn the court could have been inferred from the words that he used in his motions and memoranda. No independent evidence was necessary.
 {¶ 54} However, not every statement that embarrasses the court, impugns the *Page 17 
court, or casts the court in an unfavorable light is punishable as contempt. Where such statements are based on factual conduct and there is a good faith belief that the statements are true, counsel should be able to recount the factual circumstances without fear of a contempt charge. If factual allegations of misconduct by the court necessarily subjected attorneys to contempt — regardless of whether counsel had a good faith belief in the truth of those accusations — counsel would be subject to contempt for filing such documents as affidavits of bias and motions for recusal. "The line between vigorous advocacy and actual obstruction defie[s] strict delineation, [but] doubts should be resolved in favor of vigorous advocacy." Camburn v. Camburn, Franklin App. No. 05AP-152, 2005-Ohio-6502, ¶ 15, quoting In re Contempt of Greenberg
(C.A.9 1988), 849 F.2d 1251, 1255.
 {¶ 55} Considering the entire record before us, we find no reasonable basis to hold Rion in contempt. While the motions and memoranda presented a prima facie case of contempt, Rion testified at the hearing regarding the factual circumstances leading to his motions and memoranda. He testified that he, Wilson, and Judge Rastatter had agreed that Daly would remain out on bond pending sentencing, that Rion had told Daly and his family about the agreement, and that the agreement was instrumental in Daly's decision to waive his right to a jury trial. Rion testified that, after Daly's bond was revoked by Judge Rastatter, he attempted to speak with Judge Rastatter immediately following Daly's trial to no avail. Rion indicated that Judge Rastatter rebuffed two subsequent attempts by Rion and Wilson to speak with him in chambers.
 {¶ 56} Rion testified that "it was very painful for [him] to file this." He stated that *Page 18 
he did not want to file such accusations, and that he had tried to approach Judge Rastatter to "clear this up." With regard to his belief in the veracity of his accusations, Rion further testified:
 {¶ 57} "Now, the affidavit is a factual affidavit. There is nothing other than what I believe the complete and total truth to be in my affidavit. Every single word of that is written to this day as being true in my mind. There is no reservations about any single one of those statements.
 {¶ 58} "The memorandum, if you read the case law for a motion — for a post conviction to get a new trial or to withdraw something there has to be — The language that has to be presented has to be — It has to be an event that's so irregular that would case — It has to be a drastic event to allow someone to withdraw their waiver of a jury or withdraw after a court hearing.
 {¶ 59} "There has to be a significant occurrence. The language that was used in the memorandum was not meant to infringe upon the Court's honor. It was not meant to in any way be disrespectful to the Court.
 {¶ 60} "It was not meant to shed any dishonor upon any judicial official. I wouldn't do that. I wouldn't use a Court hearing to do that. I wouldn't use a memorandum to do that. This is what the case law was and those are the adjectives and the descriptions that are used in the case law to describe the events. They had to be of that magnitude. Did I believe that the Judge disregarded and misled us into waiving the jury? Yes, I do. I believed it then. I believe it now.
 {¶ 61} "Now, I don't know what his beliefs — I didn't call him a liar. I didn't try to put it in derogatory terms. I didn't try to put it in any way that would be insulting to the *Page 19 
Court, but I had to state what I believed to be true; and what I believed to be true is that there was a misrepresentation.
 {¶ 62} "I didn't know any other way to bring that to the Court's attention. I tried to approach him to do it, and I couldn't do it that way. This was the way to proceed. So all of the statements that are in there were not meant in any way to cause disrespect to the Court. They weren't name calling.
 {¶ 63} "It wasn't somehow me taking a cheap shot at the Court. I believe there was a misrepresentation and I simply stated it. I had to preserve and present my record, and that's how I did it.
 {¶ 64} "* * *
 {¶ 65} "Every single word that I have written about this case is one hundred percent true."
 {¶ 66} In our view, Rion's allegations in his motions and memoranda were factual allegations regarding Judge Rastatter's conduct. Although Rion's verbiage implied that Judge Rastatter had deliberately misled Rion and Daly, Rion's allegations were not personal aspersions against Judge Rastatter; Rion did not engage in name-calling. Rion testified that his allegations — albeit inflammatory — were a truthful rendition of his agreement with Judge Rastatter and the judge's conduct in failing to abide by the agreement. Because Rion presented the only testimony, his version of events is undisputed. To the extent that Judge Carey considered Judge Rastatter's unsworn statements denying the allegations, the court erred.
 {¶ 67} In his judgment entry, Judge Carey indicated that he did "not doubt Attorney Rion's sincerity" that Rion expected Judge Rastatter to continue Daly's bond *Page 20 
pending sentencing. Judge Carey noted that this was supported by Rion's immediate reaction to Judge Rastatter's revocation of bond at the conclusion of the trial. Judge Carey also credited Rion's testimony that he had represented his belief to Daly that he would remain out on bond and that this representation was a significant factor in Daly's decision to waive his right to a jury trial. Considering these findings, Rion's allegations that Judge Rastatter misled him and Daly into believing that Daly would be permitted to remain out of bond were reasonably presented in a motion for post conviction relief. Moreover, considering that Judge Rastatter apparently repeatedly refused to discuss the matter with Rion and Wilson after the trial, Rion also reasonably asserted that Judge Rastatter feigned a lack of memory of the agreement. In sum, considering the evidence presented at the contempt hearing, Rion's conduct constituted zealous advocacy for Daly, which did not warrant a finding of criminal contempt.
 {¶ 68} We agree, generally, with Judge Carey's statement that "[o]urs is a justice system founded not in force, but in trust." Indeed, public confidence in a fair, unbiased, and impartial judicial system is a paramount concern. However, the integrity of the judicial system is best served when counsel may freely make reasonable, good faith arguments to the court, even if those arguments cause, in some instances, embarrassment to the judge.
 {¶ 69} The assignment of error is sustained.
 {¶ 70} The judgment of the trial court will be reversed.
 BROGAN, J. and FAIN, J., concur. *Page 1