[Cite as *In re Guardianship of Polete*, 2018-Ohio-5275.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | |
|---|---|
| IN THE MATTER OF THE GUARDIANSHIP OF BAILEY RHEE POLETE | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

Appellate Case No. 28003

Trial Court Case No. 2016-GRD-216

(Appeal from Common Pleas Court – Probate Division)

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of December, 2018.

. . . . . . . . . . .

ROBERT H. LYONS, Atty. Reg. No. 0001750, 8310 Princeton-Glendale Road, West Chester, Ohio 45069
      Attorney for Appellant

JUSTINE Z. LARSEN, Atty. Reg. No. 0095525, 6 North Main Street, Suite 400, Dayton, Ohio 45402
      Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Sean Polete appeals from the judgment of the Montgomery County Court of Common Pleas, Probate Division, finding him in contempt. Mr. Polete contends that the finding must be overturned because there was no evidence that he intended to defy the court. He further contends that there was no probable cause to issue a show cause order against him. Mr. Polete also claims that the finding must be overturned because he was denied the right to a jury trial and because the court improperly shifted the burden of proof to him. Finally, Mr. Polete contends that the court improperly charged him with indirect, rather than direct, criminal contempt.

{¶ 2} We conclude that the probate court did not abuse its discretion in finding Mr. Polete in contempt of court. There was sufficient evidence in the record upon which a reasonable trier of fact could conclude that Mr. Polete's acts were intentional and that they impeded the effective administration of justice. We further conclude that there was no requirement for a jury trial or a showing of probable cause. Finally, we conclude that the court did not shift the burden of proof and that it did not err in charging him with indirect contempt. Accordingly, the judgment of the probate court is affirmed.

## I. Facts and Procedural History

{¶ 3} Sean and Carrie Polete are the parents of Bailey Polete, an adult child who has numerous, significant medical and developmental disabilities that render her incapable of caring for herself. In 2016, following Bailey's 18th birthday, Mrs. Polete filed an application to become Bailey's guardian. Mr. Polete filed a consent and waiver of notice with the probate court. A hearing was scheduled for November 8, 2016.

However, before the hearing began, Mr. Polete expressed the desire to file an application to become a co-guardian. It appears that the parties were having marital problems at that time. The hearing was continued, and the matter was referred for mediation, which was unsuccessful. Mrs. Polete filed for divorce in December 2016.

{¶ 4} A guardian ad litem was appointed. The subsequently-filed report of the guardian ad litem recommended that a neutral third-party be appointed as Bailey's guardian. In March 2017, both parties consented to the appointment of a third-party guardian and withdrew their respective guardianship applications. Mr. Polete subsequently sought to withdraw his consent, but the probate court denied the request. On April 7, 2017, the court appointed Melinda Poist, one of Bailey's therapists, as guardian.

{¶ 5} In July 2017, Poist filed a motion to hold Mr. Polete in contempt, alleging that he had engaged in repeated behavior that interfered with Bailey's caregivers and which also interfered with Poist's ability to act as guardian. The motion was overruled based upon the finding that the court had not issued any order directing or prohibiting Mr. Polete's actions. Thereafter, Mr. Polete filed a guardianship complaint against Poist. In August 2017, Poist filed a motion seeking to resign as guardian, citing Mr. Polete's behavior, which she claimed rendered her unable to continue in the capacity of guardian.

{¶ 6} On September 15, 2017, Mr. Polete attempted to file an application for guardianship of Bailey. After reviewing the application, the court issued a show cause order alleging that the form contained a forged signature. A hearing on the show cause order was conducted on October 24, 2017. Danielle Cross, a clerk for the probate court, testified that she interacted with Mr. Polete on September 15. She testified that he

attempted to file an application for guardianship, but that when she observed that the application was a duplicate of a previously-filed application, she refused to accept the form for filing. Cross testified that she printed a blank application and permitted Mr. Polete to complete it while standing at her desk. Cross further testified that Mr. Polete returned the completed form, and that as she was taking it to the court's chambers she noted that it had a signature purporting to be the signature of Mr. Polete's attorney, Carol Holm, despite the fact that only Mr. Polete had executed the form.[1]

{¶ 7} Holm testified that Mr. Polete came to her office around 2:00 p.m. on September 15, 2017. She testified that she signed a guardianship application in the place designated for counsel's signature. Holm further testified, upon examining the second application that Mr. Polete attempted to file, that she had not executed the signature purporting to be hers.

{¶ 8} Mr. Polete also testified that he did bring his previously-filed application to his meeting with Holm. He testified that she reviewed the form and signed it.[2] Mr. Polete testified that she then directed him to go to the courthouse to file the form. According to Mr. Polete, it was approximately 3:00 p.m. when he left Holm's office and walked across the street to the courthouse. He testified that Cross declined the document and that she provided him with a blank form to complete. Mr. Polete testified that he remained with

---

[1] Holm, who was Mr. Polete's third attorney in this matter, subsequently withdrew as counsel, and Mr. Polete hired new counsel. His fourth counsel represented him during the hearing on the motion to show cause, following which Mr. Polete again engaged new counsel.

[2] Mr. Polete's original application was not signed by an attorney as he was not represented by counsel at the time of its filing. Apparently Holm did not notice that the application had a bar-code on it indicating its previous filing.

Cross while he completed the form. Mr. Polete testified that he merely "transcribed" the information from the denied application onto the blank application, and that he "believed" he had Holm's implied consent to sign her name to the document because she had "just signed it and [he] had not changed any information."[3] Tr. p. 35-36. Mr. Polete further testified that he had "no intent to defraud the Court" or to "delay or impede the judicial process." Tr. p. 37. Although he insisted that by copying Holm's signature onto the form, he had merely been attempting to "transcribe" the material from one form to the other, he did admit that he signed the name "Carol Holm" to the form without any indication or acknowledgement that he was signing on her behalf.

{¶ 9} Following the hearing, the magistrate entered a decision finding Mr. Polete in indirect criminal contempt of court and ordering him to pay, as a sanction, the sum of $500. Mr. Polete filed objections which were overruled by the probate court. The probate court adopted the decision of the magistrate. Mr. Polete appeals.

## II. Contempt

{¶ 10} Contempt of court is behavior that "embraces a despising of the authority, justice or dignity of a court" and that "tends to bring the administration of the law into disrepute and disregard or otherwise tends to impede, embarrass or obstruct the court in the performance of its functions." *In re Green*, 172 Ohio St. 269, 175 N.E.2d 59 (1961), paragraph one of the syllabus, *reversed on other grounds*, 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198 (1962). "The purpose of contempt proceedings is to secure the dignity of

---

[3] The record belies Mr. Polete's claim that he did not change any information. However, it appears that he changed only the addresses of both parties, which had changed since the first application was filed.

the courts and the uninterrupted and unimpeded administration of justice." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph two of the syllabus.

{¶ 11} "Contempt may be characterized as either direct or indirect." *Sansom v. Sansom*, 10th Dist. Franklin No. 05AP-645, 2006-Ohio-3909, ¶ 23, citing *Byron v. Byron*, 10th Dist. Franklin No. 03AP-819, 2004-Ohio-2143, ¶ 12. Direct contempt is "misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01. Indirect contempt involves behavior that occurs outside the presence of the court and demonstrates a lack of respect for the court or its lawful orders. *Byron* at ¶ 12, citing *State v. Drake*, 73 Ohio App.3d 640, 643, 598 N.E.2d 115 (8th Dist.1991). A person found to be in contempt of court is subject to punishment. *See* R.C. 2705.05. The character and purpose of the punishment defines whether contempt is classified as civil or criminal. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980). While civil contempt contemplates punishment that is remedial or coercive and for the benefit of the complainant, criminal contempt is solely punitive. *Id.* at 253-254.

{¶ 12} Acts of direct contempt may be summarily punished. *In re Davis*, 77 Ohio App.3d 257, 263, 602 N.E.2d 270 (2d Dist.1991). However, where "the acts or omissions occur outside the presence of the court, and where confinement is a possible sanction, an accused contemnor has 'many of the significant constitutional safeguards required in criminal trials.' " *In re Estate of Carrier*, 1st Dist. Hamilton No. C-030249, 2003-Ohio-6919, ¶ 15, citing *Brown* at 212, quoting *State v. Kilbane*, 61 Ohio St.2d 201, 205, 400 N.E.2d 386 (1980). "These rights include reasonable notice before the hearing, the right to reasonable time to prepare a defense, the right to counsel, the right to subpoena and

call witnesses, the right to invoke the privilege against self-incrimination (although the contemnor may be called as a witness), the right to an impartial judge, and proof of guilt beyond a reasonable doubt." (Citation omitted) *Id.*  Further, "[i]n cases of criminal, indirect contempt, it must be shown that the alleged contemnor intended to defy the court." *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 573 N.E.2d 98 (1991), paragraph two of the syllabus.

{¶ 13} A trial court's finding of contempt will not be disturbed on appeal absent an abuse of discretion.  *State ex rel. Delco Moraine Div., Gen. Motors Corp. v. Indus. Comm. of Ohio*, 48 Ohio St.3d 43, 44, 549 N.E.2d 162 (1990), citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 417 N.E.2d 1249 (1981).  The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### III. Contempt Elements Were Established

{¶ 14} Mr. Polete's first assignment of error states:

THE TRIAL COURT ERRED IN CONCLUDING THAT ALL ELEMENTS OF

INDIRECT CRIMINAL CONTEMPT WERE SATISFIED.

{¶ 15} Mr. Polete contends that the finding of contempt was not supported by the evidence because there was no showing of intent.   He further appears to argue that the finding of contempt was erroneous because his actions cannot be deemed to have impeded the administration of justice.

{¶ 16} We begin with the notion that submitting a document, containing a forged signature, for filing in the court's record cannot constitute indirect criminal contempt

because it does not impede the administration of justice. We agree that there was no direct evidence presented that Mr. Polete's actions impeded the administration of justice, however, it would intuitively seem that forging a signature on a document required to be filed in a guardianship action and then submitting it for filing with a court constitutes misconduct. In *Fidelity Fin. Co. v. Harris*, 102 Ohio App. 497, 126 N.E.2d 812 (8th Dist.1955), the court of appeals found that the falsification of documents which are a required part of a judicial proceeding constitutes an obstruction of the administration of justice that "embarrasses the court as well as brings it into disrespect," and constitutes a fraud upon the court. *Id.* at 501. *See also Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) (filing a fake will in probate court constitutes contempt).

{¶ 17} We agree. Mr. Polete's actions served to undermine the integrity of the judicial system and demonstrated a lack of respect for the authority and dignity of the courts. Thus, we conclude that his actions were properly considered in the nature of contempt.

{¶ 18} We now turn to Mr. Polete's claim that there was insufficient evidence to support his conviction for contempt, and note that his argument also implicitly raises the claim that the contempt finding was against the manifest weight of the evidence. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Daly*, 2d Dist. Clark No. 2007 CA 26, 2007-Ohio-5170, ¶ 48, citing *State v. Dennis*, 79 Ohio St.3d 421, 683 N.E.2d 1096 (1997).

{¶ 19} Mr. Polete argues that because he completed the form in Cross's presence

without attempting to hide the signature, no reasonable person could find that he intentionally forged the document or attempted to impede the administration of justice. He further argues that he reasonably believed that he had Holm's implied permission to sign the form because she had just signed one identical thereto.

{¶ 20} Cross testified that she did not notice the signature until after Mr. Polete had handed her the completed application. Specifically, she testified that she was in the process of taking the application to the judge's chambers when she first noticed the signature and realized that only Mr. Polete had been present during the completion of the form. Further, the record demonstrates that the application did not require an attorney's signature. Thus, Cross would have had no reason to know that Mr. Polete was furnishing one. Given that Mr. Polete's first application for guardianship was completed prior to him obtaining an attorney, and that he was the only person to sign the first application, it can be inferred that he was aware that an attorney's signature was not needed and that he was aware that Cross would have no reason to think he was signing another's name to the form. Mr. Polete did not inform Cross that he had signed Holm's name or that he had permission to do so. Significantly, as noted by the magistrate, a review of the signature on the application supports a finding that Mr. Polete tried to mimic Holm's signature from the other application, an action that would have been unnecessary had he actually believed he had her permission to sign her name. The probate court, as the trier of fact, was free to discredit Mr. Polete's claim that he believed he had Holm's implied permission. Further, the court was within its rights to give little weight to the fact that Mr. Polete was in Cross's presence at the time he committed the forgery.

{¶ 21} We conclude that there was sufficient evidence in the record to support a

finding of contempt.   The first assignment of error is overruled.

**IV. No Necessity of Probable Cause Affidavit**

{¶ 22} The second assignment of error asserted by Mr. Polete states;

THE TRIAL COURT ERRED IN CONCLUDING THAT THE COURT HAD

PROBABLE CAUSE TO INITIATE INDIRECT CRIMINAL CONTEMPT

PROCEEDINGS.

{¶ 23} In this assignment of error, Mr. Polete contends that the finding of contempt must be set aside because the order to show cause was not supported by an affidavit or other sworn document providing probable cause to charge him with contempt.   In support, he cites *Springfield City Bd. of Edn. v. Ohio Assn. of Public School Emps.*, 2d Dist. Clark No. 1187, 1978 WL 216137 (May 26, 1978) for the proposition that a court cannot issue an order to show cause alleging indirect criminal contempt absent the filing of an affidavit showing probable cause.

{¶ 24} The *Springfield* case is not applicable to the facts herein.   In that case, the court addressed the necessity of an affidavit only in the context of a contempt action filed under R.C. 2727.12 for disobedience of an injunction or restraining order.   *Id.* at *2. Further, the opinion simply does not state that an affidavit establishing probable cause must be filed before the court may issue a show cause order in a contempt action arising under any other statute or common law.

{¶ 25} As an aside, we note that Mr. Polete contends that the probate court erred in finding that his contempt arose under the provisions or R.C. 2705.02.   In support he

correctly argues that none of the acts listed in that statute are applicable to the facts of his case. However, R.C. 2705.02, which enumerates certain acts constituting indirect contempt, "is not exclusive and does not place any limitation on the court's power to extend and expand the legislative rule to other acts of either a similar or a dissimilar nature." 17 Ohio Jurisprudence 3d, Contempt, Section 17 (2018).

{¶ 26} We conclude that Mr. Polete's arguments in this assignment of error lack merit. Accordingly, the second assignment of error is overruled.

## V. No Right to a Jury Trial

{¶ 27} Mr. Polete's third assignment of error provides as follows:

THE TRIAL COURT ERRED IN CONCLUDING THAT A JURY TRIAL IS NOT REQUIRED FOR DUE PROCESS IN A CHARGE OF INDIRECT CRIMINAL CONTEMPT.

{¶ 28} Mr. Polete contends that, because a court may impose a prison term of more than six months in a contempt proceeding, a person accused of criminal contempt is entitled to a trial by jury.

{¶ 29} Furthermore, in *City of Cincinnati v. Cincinnati Dist. Council 51, Am. Fedn. of State, Cty. and Mun. Emps., AFL-CIO*, 35 Ohio St.2d 197, 202, 299 N.E.2d 686 (1973), the Ohio Supreme Court held that there is no right to trial by jury in contempt proceedings, except perhaps where lengthy jail sentences are likely. Likewise, the Supreme Court of the United States has held that the constitutional guarantee of a right to a jury trial extends to "serious" criminal contempts. *Bloom*, 391 U.S. 194, 211, 88 S.Ct. 1477, 20 L.Ed.2d 522. In *Bloom*, the court specifically noted that the contemnor was sentenced to a prison

term of two years.[4]  *Id.*   In Mr. Polete's case, there is no indication that the trial court considered imposing a jail sentence, much less a lengthy one.   Therefore, we cannot conclude that he had a right to a jury trial in the contempt proceedings.

{¶ 30} We find this argument lacks merit.   The third assignment of error is overruled.

## VI. Burden of Proof Not Improperly Shifted

{¶ 31} The fourth assignment of error states as follows:

THE TRIAL COURT ERRED BY IMPROPERLY SHIFTING THE BURDEN

OF PROOF TO SEAN POLETE.

{¶ 32} In this assignment of error, Mr. Polete claims that the finding of contempt must be overturned because the magistrate incorrectly placed the burden of proof upon him.   In support, he notes that the magistrate stated that he had "the burden to establish a valid excuse for the noncompliance," and that he "failed to produce facts to support a good faith excuse for his actions."   Magistrate's Decision, Dkt. No. 127.   He cites *Arthur Young & Co. v. Kelly*, 68 Ohio App.3d 287, 588 N.E.2d 233 (10th Dist.1990) for the proposition that, in a criminal contempt case, the burden of proof cannot be shifted to the contemnor.

{¶ 33} Mr. Polete is correct that the court in *Arthur Young* did state that "[t]he burden of proof cannot shift to the defendant if the proceeding is criminal in nature."   *Id.* at 300.   However, the court went on to state that "an alleged contemnor bears the burden

---

[4] As an aside, we note that the *Bloom* decision appears to be limited to cases in which the contemnor has made a demand for a jury trial.   *Id.* at 198.   Mr. Polete did not request a jury trial.

of going forward and the burden of proof with respect to affirmative defenses such as inability to comply with the order. Placing the burden of proving an affirmative defense on a defendant in a criminal proceeding does not violate due process." *Id.* at 300-301, citing *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1986). Mr. Polete, though, claims that he did not assert an affirmative defense, and thus, there was no need to shift any burden of proof.

{¶ 34} A review of the magistrate's decision clearly demonstrates that, after hearing the witnesses and reviewing the evidence, the magistrate found that Mr. Polete intentionally signed Holm's name, and that he attempted to mimic her signature, without Holm's permission. The magistrate further found that Polete intentionally presented the application to the clerk, knowing it contained a forged signature, in an attempt to have it filed in the guardianship action. The magistrate further found that Mr. Polete's actions constituted an attempted fraud on the court. Based upon these findings alone, the magistrate concluded that Mr. Polete was guilty of criminal contempt of court.

{¶ 35} The magistrate's decision then went on to correctly note that, upon a finding of contempt, an alleged contemnor has the burden to establish a valid excuse for his actions, and that Mr. Polete failed to do so. Specifically, Mr. Polete's argument with regard to the contempt charges was that he did not have the intent to defraud the court, because he believed he had implied permission to sign Holm's name. However, the magistrate found these arguments lacked credibility.

{¶ 36} We conclude that Mr. Polete's argument misapprehends the magistrate's decision. We also conclude that the magistrate did not inappropriately shift the burden of proof. Thus, the probate court did not abuse its discretion in concluding that this

argument lacked merit.   Accordingly, the fourth assignment of error is overruled.

## VII. Indirect Contempt Classification

**{¶ 37}** Mr. Polete states the following for his fifth assignment of error:

THE TRIAL COURT ERRED BY IMPROPERLY CHARGING SEAN POLETE WITH INDIRECT CRIMINAL CONTEMPT INSTEAD OF DIRECT CRIMINAL CONTEMPT.

**{¶ 38}** Mr. Polete contends that the contempt finding should be reversed because indirect criminal contempt requires that the behavior occur outside the court's presence. In support, he cites *Fidelity Fin. Co.*, 102 Ohio App. 497, 501, 126 N.E.2d 812, for the holding that "[t]he word 'court' in the field of law is a comprehensive term. It represents the judicial department of government which operates by the method of establishing a tribunal composed of one or more judges attended by proper officers and employees for the public administration of justice.   The judge does not constitute the court.   The court, in addition to the judge or judges, is composed of the jury, clerks, bailiffs and other attaches, together with the court room and other rooms and halls used for the conductance of the business of the court.   When any part of the court is engaged in the prosecution of the business of the court, in accordance with law, the court is there present." *Id.* at 501.   Thus, Mr. Polete contends that the finding of contempt must fail because his actions occurred in the presence of the court as defined by *Fidelity*, and because he was thus charged with the incorrect type of contempt.

**{¶ 39}** We conclude that this argument lacks merit.   Whether the contempt occurred directly or indirectly constitutes a classification of the type of contempt rather

than an element of the offense. As previously noted, in a direct contempt, a trial court may summarily punish the contemnor without the necessity of providing notice or a hearing on the matter because the court has observed the behavior. With indirect contempt, which the court has not personally observed, the contemnor is entitled to a certain level of due process. The sole purpose of the direct/indirect classification is to determine where the conduct occurs, and thus, the level of due process to which an alleged contemnor is entitled. *Preston v. Shutway*, 2013-Ohio-185, 986 N.E.2d 584, ¶ 31, 34 (2d Dist.2013).

{¶ 40} The fifth assignment of error is overruled.


## VIII. Conclusion

{¶ 41} All of Mr. Polete's assignments of error being overruled, the judgment of the probate court is affirmed.


. . . . . . . . . . . .


DONOVAN, J., concurs in judgment only.

FROELICH, J., concurs.


Copies sent to:

Robert H. Lyons
Justine Z. Larsen
Jeremy Williams
Hon. Alice O. McCollum