THE STATE OF OHIO, APPELLANT, *v.* KILBANE, A.K.A. BRAUN, APPELLEE.

[Cite as State v. Kilbane (1980), 61 Ohio St. 2d 201.]

(No. 79-156—Decided February 13, 1980.)

202

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. George J. Sadd,* for appellant.

*Mr. Thomas M. Shaughnessy,* for appellee.

PAUL W. BROWN, J.  The sole issue raised in this appeal is the propriety of the sanction imposed upon appellee for her contemptuous conduct. To resolve this issue the contempt must be reviewed on two levels. *Cincinnati* v. *Cincinnati District Council 51* (1973), 35 Ohio St. 2d 197, certiorari denied (1974), 415 U.S. 994. First, appellee's conduct must be examined to see if it constituted a direct or indirect contempt. Second, the trial court's treatment of this matter must be analyzed to ascertain whether appellee was dealt with under that court's civil or criminal contempt powers.

The trial judge in this cause summarily found appellee in contempt without specifying under what authority he acted. The Court of Appeals found that appellee's refusal to come forward and testify constituted indirect contempt in specific violation of R.C. 2705. 02 (C).[2] The Court of Appeals further concluded that the sentence imposed by the trial judge exceeded his statutory authority by virtue of R.C. Chapter 2705, which limits the sanctions that may be imposed for indirect contempts.[3]

The Court of Appeals' resolution of this matter, however,

_____

[2] R.C. 2705.02 provides in pertinent part: "A person guilty of any of the following may be punished as for a contempt:

" * * *

"(C) A failure to obey a subpoena duly served, or a refusal to be sworn or to answer as a witness, when lawfully required; * * * ."

[3] Appellant raises an argument concerning the validity of the limits on indirect contempt sanctions imposed by R.C. 2705.05. We adhere to the position expressed in *Cincinnati* v. *Cincinnati District Council 51* (1973), 35 Ohio St. 2d 197, at page 207, that it is "highly doubtful that the General Assembly may properly limit the power to punish for contempt." Yet, because of our resolution of this matter, we need not reach this issue. It is well established that this court will not decide constitutional questions unless absolutely necessary. *State, ex rel. Hofstetter,* v. *Kronk* (1969), 20 Ohio St. 2d 117.

is erroneous because it is based on the mistaken premise that the trial judge found appellee in indirect contempt. The trial judge did not follow the procedures established for such contempts committed outside the court's presence but dealt with the recalcitrant witness summarily[4] under his direct contempt powers codified in R.C. 2705.01. Such a finding of direct contempt was well within R.C. 2705.01, which permits summary punishment of "a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." Appellee's conduct fell squarely within this provision, as she refused to testify in open court in the immediate view of the judge after being fully apprised of the consequences of such conduct. This was a blatant obstruction of justice.

This court has previously held that, "the fact that Section 2705.02, Revised Code, inferentially classifies an act of resistance to a lawful court process or order as an act of indirect contempt does not limit the power of a court to determine, in its sound discretion, whether such an act constitutes direct or indirect contempt." *State* v. *Local Union 5760* (1961), 172 Ohio St. 75, at page 81. In the instant cause, the trial court properly dealt with appellee's conduct under its direct contempt powers. Since a direct contempt was involved the limits placed on contempt sanctions by R.C. Chapter 2705 are inapplicable. *Myers* v. *State* (1889), 46 Ohio St. 473; *In re Roberts* (1963), 175 Ohio St. 123. The trial court's imposition of a direct contempt sanction was thus valid in this respect.

Distinctions must not only be made between direct and indirect contempt, but also between criminal and civil contempt proceedings and sentences. This court has noted this distinction stating:

"Although there has never been a clear line of demarcation between criminal and civil contempts, it is usually said

---

[4] The power of a trial court to deal summarily with contemptuous conduct which occurs in the presence of the judge is well established. *Ex Parte Terry* (1888), 128 U.S. 289; *United States* v. *Wilson* (1975), 421 U.S. 309. Such power to act without prior notice and a hearing is justified because the trial judge is personally aware of the relevant facts. It is necessary, among other reasons, so that there can be immediate punishment to vindicate the court's authority and to prevent a continuing obstruction of justice.

that offenses against the dignity or process of the court are criminal contempts, whereas violations which are on their surface offenses against the party for whose benefit the order was made are civil contempts. *O'Brien* v. *People, ex rel.,* 216 Ill., 354, 368, 75 N.E., 108, 108 Am. St. Rep., 219. Sentences for criminal contempt are punitive in nature and are designed to vindicate the authority of the court. *Gompers* v. *Bucks Stove & Range Co.,* 221 U.S., 418, 441, 55 L. Ed., 797, 31 S. Ct., 492; *United States* v. *United Mine Workers of America,* 330 U.S., 258, 302, 91 L. Ed., 884, 67 S. Ct., 677. On the other hand, the purpose of sanctions in a case of civil contempt is to coerce the contemnor in order to obtain compliance with the lawful orders of the court." *State* v. *Local Union 5760, supra,* at pages 82-83.

The most important consequences arising from this classification of contempts is that many of the significant constitutional safeguards required in criminal trials are also required in criminal contempt proceedings. See Dobbs, Contempt of Court: A Survey, 56 Cornell L. Rev. 183, at pages 241-242. These safeguards were not involved in the instant cause, however, because the direct contempt was dealt with summarily by the trial judge. *United States* v. *Wilson* (1975), 421 U.S. 309. A further consequence of the distinction made between criminal and civil contempts arises in the sentencing context and is relevant herein.

In this cause the trial judge sought to impose a contempt sanction that punished appellee for her failure to testify. The sentence was also coercive in another sense, because it allowed appellee to purge herself of the contempt by testifying prior to the conclusion of the trial. The sanction thus had a dual purpose of vindicating the court's authority, yet also encouraging the contemnor to testify.

Some jurisdictions do not permit the imposition of a contempt sanction with such a dual purpose. *E.g., Minnesota State Bar Assn.* v. *Divorce Assistance Assn.* (1976), 311 Minn. 276, 248 N.W. 2d 733; *Sword* v. *Sword* (1976), 399 Mich. 367, 249 N.W. 2d 88. Under this approach any conditional contempt sanction is automatically classified as civil in nature. It is an established principle that coercive imprisonment for civil contempt may last only as long as compliance

with the court order is possible. *Shillitani* v. *United States* (1966), 384 U.S. 364. Thus, recalcitrant witnesses may be sentenced for civil contempts for only as long as the trial continues or for the duration of a grand jury term. After that time the witness can no longer comply with the court's order and the sanction can no longer serve its purpose of coercion.

We, however, reject an approach that labels any conditional contempt—as civil. We believe that the appropriate standard for appellate review of contempt sentences is the test set forth in *Shillitani, supra.* The inquiry to be made under this test is "what does the court primarily seek to accomplish by imposing sentence?" *Shillitani,* at page 370. In cases, such as the one now before this court, a review of the entire record must be made to determine the purpose of the sentencing court.[5] The sanction imposed by the trial court should not be dispositive of this issue of the court's purpose, although it is some evidence of what was sought to be accomplished.

We believe that the record, in this cause, demonstrates that the trial judge punished appellee for criminal contempt. The court's statements in sentencing appellee, while displaying a dual purpose, are indicative of its overriding punitive purpose:

"Miss Braun, you are sentenced to six months in the County Jail, or until such time as you purge yourself of contempt by testifying in the case now on hearing.

"In the event you do not testify in the case now on hearing, your sentence is to be six months in the County Jail."

The court throughout its discussion of appellee's conduct spoke in terms of punishment for her failure to testify and labelled her actions "reprehensible." The court did not foreclose the possibility of securing appellee's testimony, but later took steps to fill the void created by her refusal to take the stand. The coercive aspect of the sentence was a secondary consideration.

In summary, we note that if the contempt is civil the sanction is primarily coercive in nature and must allow for

---

[5] A review of this nature will enable appellate courts to guard against the imposition of an excessive determinate sentence that has an overriding objective of coercion.

purging. If the contempt is criminal the sentence must be imposed primarily to vindicate the authority of the court and must be determinate. Conditions, however, may be attached to such a determinate sentence which allow for earlier termination.

By allowing a conditional criminal contempt sanction we join other jurisdictions, which recognize the need for such a means to deal with contemptuous conduct. *E.g., State* v. *Roll* (1973), 267 Md. 714, 298 A. 2d 867; *People* v. *Denson* (1975), 59 Ill. 2d 546, 322 N.E. 2d 464. See, also, Kuhns, The Summary Contempt Power: A Critique and a New Perspective, 88 Yale L.J. 39, at page 113. Under the test we have adopted today, a court need not give up any chance of obtaining a witness' testimony in order to make a valid finding of criminal contempt. This allows a trial court to retain its inherent contempt powers to deal with recalcitrant witnesses.

The sanction in this cause when viewed in light of the surrounding circumstances[6] was well within the trial judge's discretion. Accordingly, the judgment of the Court of Appeals is reversed and the judgment of the trial court is reinstated.

*Judgment reversed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

---

[6] The failure of appellee to testify was particularly egregious in this cause. During the course of the hearing into the validity of her claim regarding her common-law marriage with defendant Owen Kilbane, her knowledge of the facts of the underlying murder prosecution was revealed. It became known to the trial judge that appellee had given a five-page statement to the F.B.I. at a meeting requested by her. This signed statement detailed many aspects of the plot to kill Marlene Steele and indicated the crucial nature of appellee's testimony. Her failure to testify in light of these facts prompted the trial court to vindicate its authority through the imposition of a stringent sanction.