DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the decision of the Washington County Court of Common Pleas which found Defendant-Appellant Michelle Wingrove in contempt of court and sentenced her to a term of incarceration. Appellant presents two general arguments: (1) the evidence was insufficient to find appellant in contempt of court; and (2) the trial court erred by sentencing appellant to one hundred eighty days in jail for direct contempt of court.
 {¶ 2} For the reasons outlined below, we agree that appellant was in direct contempt of court. However, we find that the trial court's sentence amounted to an abuse of discretion. Therefore, we order the trial court to modify appellant's sentence to thirty-eight days imprisonment (i.e., time she has already served).
I. Proceedings Below
 {¶ 3} This appeal arises from events that occurred during the sentencing hearing of Jeremy Adams, Defendant-Appellant Michelle Wingrove's boyfriend.
 {¶ 4} On January 18, 2002, appellant attended Adams' sentencing hearing. When the court announced Adams' sentence, a period of three years in prison, appellant sobbed loudly and exited the courtroom. As she left the courtroom, appellant slammed open the doors leading into the hall, which caused minor damage to the molding of the doorway.
 {¶ 5} Appellant also made a statement as she left the courtroom, although there is some dispute as to what appellant actually said. One report indicates that she used several expletives to describe her displeasure with her boyfriend's sentence. Other evidence suggests she remarked that the sentence was "unfair" prior to leaving the room. Regardless of what exactly was said, it is not in dispute that appellant was emotionally distraught with the court's sentence of Adams.
 {¶ 6} Upon leaving the courtroom, appellant sat on a bench in the hallway and lamented further. Inside the courtroom, the judge ordered several Washington County Sheriff Deputies to arrest appellant for contempt. As ordered, two deputies and a bailiff approached appellant to detain her. Unaware that she was being placed under arrest, appellant told the deputies that she would be okay. The deputies informed appellant that she was under arrest and that she must go with them. Taken aback, appellant became even more upset and a struggle ensued. The deputies doused appellant with pepper spray, took her to the jail to shower, and returned her to the courtroom for a brief contempt hearing.
 {¶ 7} During the contempt hearing, appellant apologized for her conduct and assured the court that she would pay for repairs to the doors. Regardless, the court sentenced her to one hundred eighty days in the Washington County Jail, with ninety days suspended, on the condition that she pay the court costs and the costs to repair the door within thirty days of her release from jail.
 II. The Appeal {¶ 8} Appellant timely filed this appeal, raising three assignments of error.
 {¶ 9} First Assignment of Error: "The trial court erred as a matter of law when it sentenced Michelle Wingrove in excess of the statutory maximum for a first offense of contempt."
 {¶ 10} Second Assignment of Error: "The trial court abused its discretion in sentencing Michelle Wingrove to a term of incarceration that exceeded the statutory maximum for a first offense of contempt."
 {¶ 11} Third Assignment of Error: "The evidence did not support the trial court's finding that Michelle Wingrove was guilty of contempt."
 {¶ 12} We will first examine appellant's Third Assignment of Error, as it deals with the finding of contempt itself. Appellant's First and Second Assignments of Error raise substantially the same issues regarding her sentence and they will be dealt with conjointly.
 A. Ohio's Contempt Law {¶ 13} Contempt of court consists of acts or omissions that significantly obstruct the judicial process in any given case. See In reDavis (1991), 77 Ohio App.3d 257, 262, 602 N.E.2d 270. Specifically, the Supreme Court of Ohio has defined contempt as "`conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions.'"Denovchek v. Trumbull Cty. Bd. of Commrs. (1988), 36 Ohio St.3d 14, 15,520 N.E.2d 1362, quoting Wyndham Bank v. Tomaszcyk (1971),27 Ohio St.2d 55, 271 N.E.2d 815, paragraph one of the syllabus.
 {¶ 14} Contempt can include behavior that disturbs proceedings inside the courtroom, obstructs the administration of justice outside the courtroom, or disobeys judicial orders when given. See In re Green
(1961), 172 Ohio St. 269, 175 N.E.2d 59, paragraph one of the syllabus, reversed on other grounds, In re Green (1962), 369 U.S. 689,82 S.Ct. 1114; see, also, In re Davis, 77 Ohio App.3d at 262, 602 N.E.2d 270;Wyndham Bank v. Tomaszcyk, 27 Ohio St.2d 55 at paragraph one of the syllabus, 271 N.E.2d 815.
 {¶ 15} Moreover, contempt can be classified as either direct or indirect as well as civil or criminal. "Direct contempt is one that is committed in the presence of or so near the court as to obstruct the due and orderly administration of justice." In re Lands (1946),146 Ohio St. 589, 595, 67 N.E.2d 433. Indirect contempt, on the other hand, consists of acts outside the presence of the court that nevertheless show a lack of respect for the court or its orders. SeeState v. Drake (1991), 73 Ohio App.3d 640, 643, 598 N.E.2d 115. Ohio has codified both forms of contempt at sections 2705.01 and 2705.02 of the Ohio Revised Code. However, these statutes do not limit the court in its determination whether an act constitutes direct or indirect contempt. SeeState v. Kilbane (1980), 61 Ohio St.2d 201, 204, 400 N.E.2d 38 6.
 {¶ 16} Contempt can be further defined as criminal or civil. This distinction is usually determined, however, not by the contumacious act but by the character and purpose of its punishment. "If the purpose of the punishment is remedial, intended to bring about performance of the act which the court has commanded for the benefit of the injured party, the contempt is civil." Gompers v. Buck's Stove Range Co. (1911),221 U.S. 418, 441, 31 S.Ct. 492. Alternatively, criminal contempt involves offenses against the dignity of the court, where the purpose of the punishment is to vindicate the court's authority. See id; Brown v.Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253, 416 N.E.2d 610. Therefore, persons charged with civil contempt can purge themselves of the contempt through compliance with the court, while criminal contempt typically carries with it an unconditional prison term. See Brown,
supra.
 {¶ 17} The distinction between criminal and civil contempt also affects the burden of proof required to establish contempt. The burden of proof in civil contempt cases requires proving contempt by clear and convincing evidence, but in criminal contempt cases, the higher burden of proof beyond a reasonable doubt is required. See In re Kemper (Jan. 31, 1994), Washington App. No. 93CA15, citing Br own, supra.
 {¶ 18} In order to resolve the issues presented for our review, the contemptuous behavior must be subjected to a two-fold inquiry. SeeState v. Kilbane, 61 Ohio St.2d at 203, 400 N.E.2d 386, citing Cincinnativ. Cincinnati District Council 51 (1973), 35 Ohio St.2d 197,299 N.E.2d 686, certiorari denied (1974), 415 U.S. 994, 94 S.Ct. 1597. First, we must categorize appellant's conduct as either direct or indirect contempt. See Kilbane, supra. Second, we must consider whether the trial court handled the matter under its civil or criminal contempt powers. See id.
 1. Appellant's Behavior {¶ 19} The contumacious behavior complained of in the case sub judice can be classified as direct contempt. Appellant's emotional outburst occurred inside the courtroom. Therefore, the conduct was in the presence of, or so near the court, so as to categorize it as direct contempt.
 {¶ 20} Considering the second inquiry, appellant's punishment actually contains characteristics of both criminal and civil contempt. She was sentenced to ninety unconditional days in jail, the purpose of which was punitive, to vindicate the court's authority. Another ninety days of her sentence was suspended, pending payment of court costs and repair costs for the doorway. This part of the punishment was civil, designed to coerce appellant to pay for the damage to the doorway and court costs. It is well established, however, that the same act can qualify as both civil and criminal contempt, and sanctions for both can be combined in order for the court to achieve its desired result. SeeBrown, supra.
 2. Review of Trial Court's Finding {¶ 21} In her Third Assignment of Error, appellant argues that there was insufficient evidence to find appellant in contempt of court. However, a reviewing court will not reverse a finding of contempt unless the trial court abused its discretion. See First Bank of Marietta v.Mascrete, Inc. (1998), 125 Ohio App.3d 257, 263, 708 N.E.2d 262, citingState ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10, 11,471 N.E.2d 1249. The term "abuse of discretion" has been defined by the Supreme Court of Ohio as "more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157-158,404 N.E.2d 144.
 {¶ 22} In evaluating the discretion of a lower court, a reviewing court must be circumspect. The fact that the reviewing court might reach a different conclusion than did the lower court does not establish an abuse of discretion. See Cox v. Fisher Fazio Foods, Inc. (1984),13 Ohio App.3d 336, 469 N.E.2d 1055. Rather, the reviewing court must demonstrate that the lower court's exercise of discretion was "not justified by, and clearly against, reason and the evidence; * * * such action must plainly appear to effect an injustice to the appellant."Sinclair v. Sinclair (1954), 98 Ohio App. 308, 129 N.E.2d 311. Against this backdrop, we will consider whether the trial court abused its discretion by finding the appellant in contempt.
 {¶ 23} The record shows that during the sentencing of her boyfriend, appellant became upset, cried out loudly and stormed out of the courtroom. There is also evidence in the record that she directed some form of verbal battery at the court, although exactly what she said is unsettled. Moreover, upon leaving the courtroom, appellant slammed the doors with enough force to cause some minor damage to the courtroom doorway. However, we cannot say that the trial court's finding, based on these facts, was unreasonable, arbitrary or unconscionable. Even though this Court sympathizes somewhat with appellant's emotional reaction, we cannot conclude that it was clearly against reason and evidence for the trial court to find that her conduct amounted to disrespect for the administration of justice or "emabrrass[ed], impede[d] or obstruct[ed] [the trial] court in the performance of its functions." Wyndham Bank v.Tomaszcyk, 27 Ohio St.2d 55 at paragraph one of the syllabus,271 N.E.2d 815. Therefore, we are not prepared to hold that the trial court abused its discretion by finding appellant in contempt of court.
 {¶ 24} Appellant's Third Assignment of Error is overruled.
 B. The Trial Court's Summary Punishment {¶ 25} Appellant's First and Second Assignments of Error take issue with how the trial court punished her for contempt. As stated earlier, appellant's behavior amounted to direct contempt against the trial court. A reviewing court will not reverse or modify the trial court's sentence for direct contempt unless the court abused its discretion. See Kemper, supra.
 {¶ 26} It is a longstanding rule that the power of a court to punish for direct contempt is inherent in the court. See Zakany v. Zakany
(1984), 9 Ohio St.3d 192, 194, 459 N.E.2d 870; Davis, supra. Moreover, because direct contempt is committed in the court's presence and the facts giving rise to that contempt are within the court's personal knowledge, it may be punished summarily. See Kilbane, supra.
 {¶ 27} Summary contempt is a subcategory of direct contempt that concerns itself with the procedure under which the court censures direct contempt. If direct contempt qualifies as summary contempt, "the court may determine and punish contempt without an information, indictment, or jury. The court thus acts on the basis of facts known to it directly." Inre Davis, 77 Ohio App.3d at 263, 602 N.E.2d 270. If the court institutes such a summary proceeding, the usual constitutional safeguards are not required. See In re Neff (1969), 20 Ohio App.2d 213, 254 N.E.2d 25.
 {¶ 28} Further authority for use of a summary proceeding to punish direct contempt is found in R.C. 2705.01. This section provides:
 {¶ 29} "A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."
 {¶ 30} However, this is not to say that a court's summary contempt power is unconstrained. The power to institute such summary proceedings is limited in two ways. First, the acts that constitute contempt must be known to the court personally. See In re Davis, 77 Ohio App.3d at 263,602 N.E.2d 270. Second, the nature of the contempt must establish an imminent threat to the administration of justice, "where immediate punishment is essential to prevent demoralization of the court's authority before the public." In re Oliver (1948), 333 U.S. 257, 275,68 S.Ct. 499. See, also, In re Davis, 77 Ohio App.3d at 263-264, 602 N.E.2d 270. Therefore, as the court in Davis correctly asserts, "a summary proceeding is not authorized simply because the conduct constitutes direct contempt." Id at 265. The relevant factor is the need to vindicate the court's authority immediately and restore order to the proceedings before the court. See id.
 {¶ 31} Appellant argues that the trial court below erred by summarily sentencing appellant to one hundred eighty days in jail pursuant to R.C. 2705.01 instead of following the limitations outlined in R.C. 2705.05, which provides:
 {¶ 32} "A) In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. If the accused is found guilty, the court may impose any of the following penalties:
 {¶ 33} "(1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both;
 {¶ 34} "(2) For a second offense, a fine of not more than five hundred dollars, a definite term of imprisonment of not more than sixty days in jail, or both;
 {¶ 35} "(3) For a third or subsequent offense, a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both." R.C. 2705.05(A).
 {¶ 36} Essentially, appellant argues that because this is her first contempt offense, the court must limit its punishment to that prescribed by R.C. 2705.05(A)(1). We do not agree with appellant on this point.
 {¶ 37} Ohio's legislature has supplemented the court's inherent contempt authority with R.C. Chapter 2705. However, these statutes do not place any limitations on this power regarding acts that constitute contempt or penalties for contumacious acts. See Zakany v. Zakany,9 Ohio St.3d at 194, 459 N.E.2d 870. See, also, Hale v. State (1896),55 Ohio St. 210, 215, 45 N.E. 199. "[T]he [contempt] power inheres in courts independently of legislative authority. A power which the legislature does not give, it cannot take away." Id. at 215. Furthermore, the Supreme Court of Ohio has stated that where a person has been found to be in direct contempt of court, "the limits placed on contempt sanctions by R.C. Chapter 2705 are inapplicable." State v.Kilbane, 61 Ohio St.2d at 204, 400 N.E.2d 386.
 {¶ 38} In the case sub judice, the summary proceeding, a power inherent in the court and reiterated in R.C. 2705.01, was warranted. Appellant caused a disturbance in open court, witnessed by members of the public. The facts giving rise to the contempt were within the court's personal knowledge. Immediate vindication of the court's authority was necessary to restore its dignity, which had been tarnished by appellant's open display of disrespect to the court. Such a summary proceeding, as was initiated here, is necessary to prevent the depravity of the court's authority. "Unless the flagrant defiance of the person and presence of the judge before the public is not instantly suppressed and punished, demoralization of the court's authority will follow." Cooke v. U.S.
(1925), 267 U.S. 517, 536, 45 S.Ct. 390. (Emphasis added.) The court inCooke made clear that "[t]o preserve order in the courtroom for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court. Such summary vindication of the court's dignity and authority is necessary." Cooke v. U.S.,267 U.S. at 534, 45 S.Ct. 390.
 {¶ 39} Therefore, the court below had discretion to summarily punish direct contempt pursuant to its inherent powers, as well as R.C. 2705.01.
 {¶ 40} However, while we find that the trial court correctly found appellant summarily in contempt, we also find that the trial court abused its discretion by sentencing appellant as it did. The imposition of a one hundred eighty day jail sentence for the conduct demonstrated by the appellant was not only unreasonable but "so palpably and grossly violative of fact and logic" that it demonstrated a perversity of reason and overreaching bias such that the trial court was consumed more with passion than with sound discretion and an eye towards justice. Kemper, supra, citing State v. Jenkins (1984), 15 Ohio St.3d 164, 222,473 N.E.2d 264.
 {¶ 41} Kemper is a similar case, coincidentally arising out of the same county as the case sub judice, that provides sound guidance into the incongruity of the punishment imposed by the trial court. There, this Court found that the trial court's imposition of a thirty-day sentence for contempt was unwarranted. The appellant in that case was similarly present during the sentencing of his brother-in-law, who had been convicted of vehicular homicide. The victim's husband made a statement to the court, during which the appellant yelled out "what the hell do you know!" The trial court immediately stopped the hearing, found the appellant in contempt, sentenced him to thirty days in jail before removing him from the courtroom. Thereupon, the original sentencing hearing of appellant's brother-in-law continued until its completion, at which time the appellant's summary contempt hearing took place. InKemper, this Court noted several mitigating factors, including the fact that the trial court was allowed to finish its proceedings after the appellant was removed from the courtroom, that the appellant apologized to the court and the victim's husband and that the obstruction was minimal. This Court modified that sentence to two days in jail, time appellant had already served. See Kemper, supra.
 {¶ 42} This case is extremely analogous to Kemper. Appellant caused a mild disturbance prior to exiting the courtroom. Although she damaged the courtroom's doorway and shouted an undetermined verbal cliché to the court, the trial court's proceedings resumed without further incident. Furthermore, appellant returned to court, apologized, and assured the court that she would pay for the damage to the doors. Unlike Kemper, she was sentenced to one hundred eighty days in jail, with ninety days suspended upon payment of court and repair costs. We find this punishment to be an abuse of discretion. This penalty is clearly excessive, given both the conduct constituting the contempt as well as appellant's attitude and demeanor in the contempt hearing.
 {¶ 43} Therefore, appellant's First Assignment of Error is overruled, but her Second Assignment of Error is well taken. The record reflects that appellant has reimbursed the court for damage to the doors and spent thirty-eight days in jail. Therefore, we order the trial court to modify appellant's sentence to thirty-eight days imprisonment, or more specifically time she has already served.
 III. Conclusion {¶ 44} Accordingly, we overrule appellant's First and Third Assignments of error. We sustain her Second Assignment of Error and order the trial court to modify appellant's sentence with respect to incarceration to thirty-eight days imprisonment, or, more accurately, time she has already served.
Judgment affirmed in part and reversed in part.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED INPART and the cause remanded to the trial court for further proceedings consistent with this opinion, costs herein taxed equally between the parties.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the WASHINGTON COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEENPREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, IT IS TEMPORARILYCONTINUED FOR A PERIOD NOT TO EXCEED SIXTY DAYS UPON THE BAIL PREVIOUSLYPOSTED. The purpose of the continued stay is to allow appellant to file with the Supreme Court of Ohio an application for stay during the pendency of proceedings in that court.
If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of appellant to file a notice of appeal with the Supreme Court of Ohio within the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J., and Kline, J.: Concur in Judgment Only.