[Cite as *Burke v. Burke*, 2012-Ohio-6279.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| LAURA L. BURKE, | ) | |
| | ) | CASE NO.  11 MA 166 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| JAMES C. BURKE, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:         Civil Appeal from Common Pleas
                                  Court, Domestic Relations Division,
                                  Case No. 92 DR 334.


JUDGMENT:                         Affirmed in Part. Reversed in Part
                                  and Remanded.


APPEARANCES:
For Plaintiff-Appellee:           Attorney Mark Carfolo
                                  23 Lisbon Street, Suite K
                                  Canfield, OH  44406


For Defendant-Appellant:          Attorney Steven H. Slive
                                  Slive & Slive Co., LPA
                                  526 Superior Avenue, Suite 935
                                  Cleveland, OH  44114


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich


                                  Dated: December 20, 2012

DeGenaro, J.

{¶1} Defendant-Appellant, James C. Burke, appeals the August 23, 2011 judgment of the Mahoning County Court of Common Pleas, finding him in contempt for failing to comply with a court order to pay spousal support to his former wife, Laura L. Burke, and sentencing him to 10 days in the county jail, with purge conditions. On appeal, James asserts that in light of his specific financial circumstances coupled with the unusual nature of the spousal support order (i.e., it was of unlimited duration with no reservation of jurisdiction), that the trial court abused its discretion by finding him in contempt. James contends the court erroneously rejected his inability to pay defense and asserts that instead of finding him in contempt, the court should have merely acknowledged the arrearage and provided Laura with a judgment for that amount.

{¶2} Upon review, we raise the threshold jurisdictional issue of whether the contempt judgment is a final, appealable order and conclude that it is. With regard to the assigned errors, because James made no attempt to comply with the spousal support order for over two years, despite having some income and admittedly being able to pay at least some of the support, the trial court's decision to hold him in contempt was reasonable, as was the decision to order James to pay a portion of Laura's attorney fees. The lump-sum judgment on the arrearage is affirmed. However, the purge condition imposed by the trial court is void because it is merely a reaffirmation of the trial court's previous support order and attempts to regulate future conduct. Accordingly, the contempt finding of the trial court and the imposition of attorney fees are affirmed, but the purge condition is reversed and the matter remanded for further proceedings.

## Facts and Procedural History

{¶3} James and Laura were married on August 26, 1978. The parties ended their marriage by decree of dissolution on May 22, 1992. During the dissolution proceedings only Laura was represented by counsel. Among other things, the decree ordered James to pay child support to Laura for the parties' four then-minor children along with $650 per month in spousal support, plus processing fee. The decree stated that the spousal support obligation "shall continue until such time as the Wife remarries, the Wife dies, or the Husband dies. Upon happening of the earlier above-referred to events, all

spousal support shall cease." The decree of dissolution contained no reservation of jurisdiction with regard to spousal support. James never moved to vacate the decree.

{¶4} In 2002, James was laid off from his job, where he had been making $85,000 per year. He had by this point retained counsel and moved the trial court for a modification of the spousal support. Citing the lack of reservation of jurisdiction in the order, the trial court denied the motion.

{¶5} By 2009, James continued to have financial problems. He had filed bankruptcy in 2006. He stopped making any spousal support payments after he was again laid off in January 2009.

{¶6} On January 21, 2011, Laura filed a motion to show cause as to why James should not be held in contempt for failing to pay spousal support as ordered. At the time the motion was filed, Laura contended that James owed an arrearage in excess of $27,000. Laura also requested that James be ordered to pay her attorney fees.

{¶7} The motion was called for a hearing on May 25, 2011. Laura testified about the marriage and the dissolution dates and the language of the spousal support obligation. She stated that she had never remarried and that obviously both parties were still alive. She stated that the last spousal support payment she received from James was on January 2, 2009, and that since then she had received no full or partial payments and that she was therefore asking the court to hold James in contempt. She testified that a $30,754.07 spousal support arrearage had accrued by the time of the hearing. Laura testified that in 2010 her income was $46,000: $37,000 from her job as an adult probation officer at the county courts, and $9,000 from a part-time job at J.C. Penney. She testified that she needed to work two jobs to survive.

{¶8} James testified that he had been working at a company called U.S. Reports doing environmental consulting from 2004 until he was laid off in 2009. His starting salary was $60,000 per year and his ending salary was $85,000. James holds a bachelor's and a master's degree in geology. James testified that he remained unemployed since 2009, except for occasional contract jobs. He stated that he had been searching for employment both in and outside of his field of expertise (geology and environmental

consulting.) For example, he pursued management positions in the retail, storage and automobile industries, and also looked into insurance jobs and position with the U.S. Army Corp of Engineers.

**{¶9}** James further noted that he suffers from numerous health problems including back pain, a spinal condition, and heart condition, which together prohibit him from performing manual labor, and require multiple prescription medications, which cost $438 per month out of pocket.

**{¶10}** In 2009, James withdrew $17,000 from an IRA in the hopes of starting a business, but testified that the business had not been profitable. He had $5000 remaining in the IRA, but said he would incur a significant tax penalty if he withdrew those funds to use to pay his spousal support obligation. In 2009, James' taxed Social Security earnings were $24,784 which consisted of $15,114 in unemployment compensation and $17,047 that he withdrew from his IRA. He also claimed a business loss of $8,328. In 2010, James received $19,559 in unemployment compensation. As of the date of the hearing (May 25) James had earned $5800 from environmental consulting contract jobs.

**{¶11}** James testified that he did not own his home. He remarried in 2008 and his new wife owns the home in which they both reside. James further testified that he owns a 2004 Dodge Dakota free and clear of any liens. He claimed that his monthly expenses ($3700) substantially exceed his monthly income ($1500); however, he provided no income or expense information about his new wife. He conceded that his new wife is gainfully employed and contributes to the household expenses.

**{¶12}** James admitted he had not made even a partial spousal support payment since he was laid off in January 2009. James further admitted he likely did have money left over at the end of every month that he could have used to pay at least a small portion of the spousal support as ordered. James claimed he did not know he was permitted to make partial payments, apparently assuming it was an all or nothing proposition.

**{¶13}** Per the trial court's request during a pre-hearing telephone conference, James brought documents to verify his income and medical conditions. He presented them to the trial court as exhibits, over objections by Laura. It appears that the trial court

admitted the exhibits, and the court discussed them in its August 23, 2011 judgment entry finding James in contempt. However, the exhibits were not attached to the transcript or included under separate cover in the file. They included a letter from James' doctor verifying his various medical conditions, a 2009 joint tax return filed by James and his new wife, a letter from the unemployment compensation board in Texas verifying the amount of benefits James had received, a list of James' prescription medications, and a list created by James regarding comparing his expenses and income. James redacted from the tax return all income information for the new wife, citing her privacy concerns. Because of that, and because there was no evidence of his new wife's expenses, the trial court opined that James' claimed expenses were not all that relevant to the contempt proceedings. ("THE COURT: I only think his expenses would be important if he didn't have anybody else's income.") Some of these exhibits appear to be attached to James's post-hearing brief, namely the letter from his physician and his list of prescription medications.

{¶14} On June 6, 2011, the trial court issued a judgment entry concluding that an audit was necessary to accurately determine the amount of arrearage of the spousal support. The trial court thus ordered CSEA to conduct a manual audit. The trial court also ordered the parties to submit briefs regarding any legal issues raised at the contempt hearing.

{¶15} In his brief, James urged the trial court to determine that he is not in contempt of court because his persistent unemployment and medical problems made it impossible for him to comply with the spousal support order. James further moved the court to issue a nunc pro tunc order either vacating the decree of dissolution as to the issue of spousal support in full or adding reservation of jurisdiction so that the court could modify the spousal support order and set the matter for further hearing as to the modification. In the alternative, James moved the court to vacate the spousal support order based upon Civ.R. 60(B).

{¶16} Laura filed a post-hearing brief in which she asserted that all of the elements of civil contempt had been proven. She emphasized that James had not made

even a good faith effort to comply with the court's order regarding spousal support.

**{¶17}** On August 23, 2011, the trial court issued an order finding James in contempt for failing to pay spousal support as ordered, and sentencing him to 10 days in the Mahoning County jail. James was given the opportunity to purge the contempt by paying the monthly support payments beginning September 1, 2011. The trial court further ruled: "[t]his matter is set for execution of sentence before this Court at such time that Plaintiff files an affidavit with this Court that Defendant has not made support payments for three consecutive months."

**{¶18}** The trial court also found that pursuant to the CSEA Audit, James owed $30,764.07 in spousal support arrearages as of May 30, 2011. The trial court granted Laura a lump sum judgment in the amount of $29,860.36 ($30,764.07 minus the processing fee arrearages of $903.86.) The court ordered that the lump sum judgment would be subject to the statutory rate of interest pursuant to R.C. 1343.03(A). The court also ordered James to pay $500 to Laura towards the attorney fees and costs within 30 days of the order.

**{¶19}** Finally, the trial court dismissed any other matters or motions pending before the court that were not addressed in the order, including those matters raised by James in his post-hearing memorandum (e.g., his request for a nunc pro tunc order modifying the decree of dissolution, and his motion for relief pursuant to Civ.R. 60(B)).

**{¶20}** From the August 23, 2011 order, James filed a timely appeal with this court on September 22, 2011. On November 23, 2011 James sought a stay of the trial court's judgment in this court. In a November 30, 2011 judgment entry, this court continued its ruling on the stay motion until such time that James files a stay motion in the trial court. James then filed a motion requesting that this court reconsider its November 30, 2011 order.

**{¶21}** In a January 6, 2012 judgment, this court overruled James' Motion to Stay execution of contempt sentence pending appeal since James's jail sentence was conditional and had not yet been executed. This court concluded that the motion for reconsideration was therefore moot.

**Final Appealable Order**

{¶22} A threshold issue raised by this court during oral argument is whether the contempt order was final and appealable. *See State ex rel. Wright v. Ohio Adult Parole Auth*, 75 Ohio St.3d 82, 84, 661 N.E.2d 728 (1996) (jurisdictional issues should be raised sua sponte by reviewing court).

{¶23} In the order at issue, the trial court found James in contempt and sentenced him to 10 days in the Mahoning County jail; however, the order provided that "Defendant may purge himself of said contempt by paying the monthly support payments beginning September 1, 2011." Further, the trial court set the matter "for execution of sentence before this Court at such time Plaintiff files an affidavit with this Court that Defendant has not made support payments for three consecutive months." The trial court also ordered James to pay $500 for attorney fees and costs to Laura within 30 days, and granted Laura a lump-sum judgment on the spousal support arrearage.

{¶24} Courts generally agree that "[t]o constitute a final appealable order in a contempt proceeding, the order must contain both a finding of contempt and the imposition of a sanction." *In re Estate of Orville*, 7th Dist. Nos. 04 MA 97, 04 MA 100, 2004-Ohio-6510, ¶36, citing *McCree v. McCree*, 7th Dist. No. 01 CA 228, 2003-Ohio-1600, citing *Chain Bike Corp. v. Spoke 'N Wheel*, 64 Ohio App.2d 62, 64, 410 N.E.2d 802 (8th Dist.1979). However, there are inconsistencies within this and other districts regarding whether a sanction is truly imposed if a court provides purge conditions. Such conditions are generally a requirement for a civil contempt citation. *See Nichol v. Nichol*, 7th Dist. No. 97-CA-143, 2000 WL 652537, *5 (May 8, 2000), citing *State v. Kilbane*, 61 Ohio St.2d 201, 206-207, 400 N.E.2d 386 (1980).

{¶25} For example, in *McCree* this court concluded that an order finding the appellant in contempt, imposing a 30-day jail sentence and providing purge conditions was a final, appealable order. In the contempt order in *McCree*, the trial court set the matter for a compliance hearing several months later and the appellant could have avoided jail by appearing at the compliance hearing and proving that he had purged the contempt. In light of that this court concluded that "[t]he trial court did not defer the

sentencing aspect of the contempt hearing or defer imposing a specific sentence," and that therefore the contempt judgment was a final, appealable order.  *McCree* at ¶21.

**{¶26}**  By contrast, in *B.J. Alan Co., v. Andrews,* 7th Dist. No. 10 MA 87, 2011-Ohio-5165, this court stated: "Where the contempt order imposes a conditional sanction with the opportunity to purge, it is not final until the opportunity to purge has been removed."  *Id.* at ¶22, citing *Carroll Cty. Bur. of Support v. Brill*, 7th Dist. No. 05CA818, 2005-Ohio-6788, ¶22, citing *Davis v. Davis*, 11th Dist. No.2004-G-2572, 2004-Ohio-4390, ¶6; *Board of Trustees of Chester Tp. v. Baumgardner*, 11th Dist. No. 2002-G-2430, 2003-Ohio-436, ¶12.  Since the judgment entry at issue in *B.J. Alan* contained a "conditional imposition of sentence only," this court thus concluded it was not a final order and that therefore the trial court properly considered a motion to reconsider it.  *Id.* at ¶23.

**{¶27}**  With no guidance from the Ohio Supreme Court on this precise issue, there is disagreement among the various appellate districts, as well.  *Compare Baumgardner, supra* at ¶13 (contempt citation imposing conditional fine and jail sentence was not a final appealable order) *with Kapadia v. Kapadia*, 8th Dist. No. 96910, 2012-Ohio-808, ¶3: ("The DR court ordered [appellant] to serve [a 30-day jail] sentence if she did not purge her contempt by making the required payments.  Although some other districts might hold that such an order is not final because the appellant was not yet actually required to serve the sentence, this district has found otherwise.")

**{¶28}**  Although we are cognizant of the split in authority on this issue, we conclude that this is not the proper case to resolve this issue, because, as James correctly asserted during oral argument, the purported purge condition imposed by the trial court in this case is void insofar as it attempts to regulate James' future conduct.

**{¶29}**  In *Marden v. Marden*, 108 Ohio App.3d 568, 671 N.E.2d 331 (12th Dist.1996), and *Tucker v. Tucker*, 10 Ohio App.3d 251, 461 N.E.2d 1337 (10th Dist.1983) the courts analyzed purge conditions similar to the one in this case and concluded they were invalid.  The order in *Marden* sentenced the support obligor to three days in jail "to be stayed on the condition that he [made] some payment on the current support each and every month."  *Marden* at 570.  The order in *Tucker* sentenced the obligor to ten days in

jail, but the sentence was suspended "upon the condition that [the obligor] keeps future child support payments current and on time." *Tucker* at 251.

**{¶30}** The courts in *Marden* and *Tucker* held that civil contempt orders suspending punishment on the condition that the contemnor comply in the future with terms of a pre-existing support order do not properly allow for purging and are therefore void. *Marden* at 571; *Tucker* at 252. The courts reached this conclusion because "[a] contempt order which regulates future conduct 'simply amounts to the court's reaffirmation of its previous support order and can have no effect since any effort to punish a future violation of the support order would require new notice, hearing and determination.' " *Marden* at 333, quoting *Tucker* at 252.

**{¶31}** In this case, the trial court's August 23, 2011 order provided that James "may purge himself of said contempt by paying the monthly support payments beginning September 1, 2011." This presents the same problem that the purge orders in *Marden* and *Tucker* did; it is merely a reaffirmation of the trial court's previous support order and attempts to regulate future conduct. Therefore, we conclude the purge condition in this case is void.

**{¶32}** Because the trial court's order did not contain a valid purge condition, this case is distinguishable from *McCree*, *B.J. Alan*, *Baumgardner* and *Kapadia*, cited above. The order therefore fails to present the jurisdictional quandary at issue in those cases. Accordingly, we conclude that the trial court's August 23, 2011 order is final and appealable.

### Contempt

**{¶33}** Both of James' assignments of error challenge the trial court's contempt finding and will be discussed together. They assert:

**{¶34}** "The Trial Court Erred by Finding Appellant in Contempt Notwithstanding his Valid and Proven Defense of His Inability to Pay the Spousal Support Order."

**{¶35}** "The Trial Court Erred by Finding Appellant in Contempt of the Non-modifiable, Indefinite Spousal Support Order; the Court Erred by not Acknowledging Arrearage Owed to Appellee without a Finding of Contempt."

{¶36} James argues that he presented ample evidence to prove his affirmative defense of impossibility of compliance with the court-ordered support. Further he contends that in light of what he believes is a patently unfair situation (an indefinite spousal support order containing no reservation of jurisdiction coming after a 13-year marriage where both parties were employed), the trial court erred by finding him in contempt and ordering jail time as opposed to simply ordering the lump-sum civil judgment on the arrearage for Laura.

{¶37} This case involves a civil contempt proceeding. "Civil and criminal contempt are distinguishable, in part, by the sanctions imposed. 'If sanctions are primarily designed to benefit the complainant through remedial or coercive means, then the contempt proceeding is civil.' " *In re Mapley*, quoting *Denovchek v. Board of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16, 520 N.E.2d 1362 (1988). We review a trial court's decision regarding contempt for an abuse of discretion. *Faubel v. Faubel*, 7th Dist. Nos. 05-MA-101, 05-MA-210. 2006-Ohio-4679, ¶39, citing, *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). The term "abuse of discretion" means that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶38} "The inability to pay support is a recognized defense in child and spousal support contempt actions." *In re Mapley* at ¶8 (citing cases). S*ee also Nichol, supra.* "The inability to pay must be based on circumstances beyond the obligor's control." *Faubel* at ¶43. Whether a party is unable to pay is a factual determination to be made by the court. "Once a person seeking contempt demonstrates an obligor's failure to pay support, the burden of proof shifts to the obligor to prove his or her inability to pay." *Id.*; *see also, Liming v. Damos*, Slip Opinion No. 2012-Ohio-4783, ¶20 (Supreme Court). As here, often the determination of this defense turns on issues of obligor credibility.

{¶39} James did not contest that he had failed to pay spousal support since January 2009. Thus, the burden shifted to him to prove his inability to pay. The trial court concluded that James failed to meet this burden, noting that James had the ability to make some payments, but instead made none. We conclude that the trial court

reasonably rejected James' defense. By James' own admission, he could have made some payments towards support, yet did not. James asserted that he was unaware that partial payments were an option; however, the trial court seemed to reject that excuse. The trial court as fact-finder was in the best position to determine James' credibility. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984).

**{¶40}** James also testified that his monthly expenses far exceeded his monthly income however, he failed to provide a full picture of his household finances. Specifically, he omitted all income and expense information pertaining to his new wife, yet conceded that she contributed to their overall expenses and income. "While a new spouse's income cannot be considered in determining an obligor's ability to pay spousal support, the court may consider the fact that the obligor directly benefits from sharing living expenses with his new wife." *Preseren v. Preseren*, 8th Dist. No. 96431, 2011-Ohio-5181, ¶16, citing *Feldman v. Feldman*, 8th Dist. No. 92015, 2009-Ohio-4202; *Manzella v. Manzella*, 12th Dist. No. 20618, 2005-Ohio-4519, ¶12, citing *McNutt v. McNutt*, 12th Dist. No. 20752, 2005-Ohio-3752. *See, also, Fisher v. Fisher*, 5th Dist. No. 2008 CA 00049, 2009-Ohio-4739, ¶36 ("Although appellant testified that none of his new spouse's income was used for joint household expenses and he paid all household bills himself, the court did not abuse its discretion in considering that her income was available for living expenses.")

**{¶41}** Thus, based on the above we conclude that the trial court reasonably determined James failed to meet his burden of proof with regard to his inability to pay defense and accordingly affirm the trial court's contempt finding.

**{¶42}** However, James also challenges the sanction imposed and the validity of the purge order. As discussed, the purge condition in this case is merely a reaffirmation of the trial court's previous spousal support order, attempts to regulate future conduct and is therefore void. *See Marden; Tucker.*

**{¶43}** The fact that the trial court also ordered James to pay Laura $500 as part of her attorney fees and costs within 30 days does not affect the validity of the purge order because this was a separate and distinct part of the order and is governed by R.C. 3105.18(G), which provides:

If any person required to pay * * * spousal support under an order made or modified by a court on or after January 1, 1991, is found in contempt of court for failure to make * * * spousal support payments under the order, the court that makes the finding, *in addition to any other penalty or remedy imposed*, shall assess all court costs arising out of the contempt proceeding against the person and shall require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt.  (Emphasis added.)

**{¶44}** In sum, the trial court's August 23, 2011 judgment finding James in contempt for failing to pay spousal support was a final, appealable order.  Because James made no attempt to comply with the spousal support order for over two years, despite having some income and admittedly being able to pay at least some of the support, the trial court's decision to hold him in contempt was reasonable, as was the decision to order James to pay a portion of Laura's attorney fees.  The lump sum judgment on the arrearage is also affirmed.  However, the purge condition imposed by the trial court is void.  Accordingly, the contempt finding of the trial court and the imposition of attorney fees are affirmed, but the purge condition is reversed and the matter remanded for further proceedings.

Donofrio, J., concurs.

Vukovich, J., concurs.