[Cite as *State v. Stafford*, 2013-Ohio-4356.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 12 CO 24 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| ALICIA STAFFORD | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:              Criminal Appeal from the Municipal Court
                                       of Columbiana County, Ohio
                                       Case No. 12 TRC 2082

JUDGMENT:                              Reversed.
                                       Contempt Citation Dismissed.

APPEARANCES:

For Plaintiff-Appellee:                Atty. Robert Herron
                                       Columbiana County Prosecutor
                                       Atty. Megan Payne
                                       Assistant Prosecuting Attorney
                                       105 South Market Street
                                       Lisbon, Ohio  44432

For Defendant-Appellant:               Atty. Douglas A. King
                                       Hartford, Dickey & King Co., LPA
                                       91 West Taggart Street
                                       P.O. Box 85
                                       East Palestine, Ohio  44113

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

                                       Dated:  September 26, 2013

WAITE, J.

{¶1} Appellant Alicia Stafford was charged in the Columbiana County Municipal Court with operating a motor vehicle while under the influence of alcohol or drugs (OVI) and driving outside marked lanes. At the pre-trial hearing, the trial judge believed that Appellant presented herself to the court while under the influence of drugs or alcohol and ordered a drug test to be performed immediately. The judge interpreted the results as positive for methamphetamines. The court then cited Appellant for direct contempt and imposed 30 days in jail, effective immediately. She now appeals the contempt citation. Appellant argues that she could not be convicted of contempt because she did not violate any court order, that the 30-day jail term was too harsh, and that the drug test violated her rights under the Fourth Amendment. Although we do not completely adopt any of Appellant's arguments, we have determined that the contempt charge is not supported by the record. The results of the drug test are not part of the record, and Appellee does not present any particular legal basis for the administration of the test as part of a pre-trial hearing. Although the record reflects that the trial judge could have properly cited Appellant for contempt because her apparent intoxication prevented the pre-trial hearing from continuing, the contempt conviction was explicitly based on a drug test that is not part of the record. Therefore, Appellant's first and third assignments of error are meritorious. The judgment of the trial court is reversed and the contempt charge is dismissed.

{¶2} On April 22, 2012, Appellant was cited in New Waterford, Ohio, for OVI, a violation of R.C. 4511.19(A)(1), (9), and for driving outside of marked lanes, a

violation of R.C. 4511.33. This was Appellant's second OVI offense within six years. She appeared in court on April 24, 2012, and was released on a $1,000 bond. Pre-trial was scheduled for May 3, 2012.

{¶3} Appellant appeared in court on the day of the pre-trial hearing showing signs that she could not fully participate in the hearing. The court immediately ordered some type of drug test to be administered. There are no actual details about this drug test in the record, nor can the results of the test be found. The trial judge believed that the results of the drug test indicated a positive result for methamphetamines. Based on the results of the drug test, the court held Appellant in direct contempt for appearing in an impaired condition. The court imposed a 30-day jail term and ordered Appellant be taken directly to jail. Pre-trial on the original charges was reset for May 17, 2012. The court filed the judgment entry of contempt on May 3, 2012.

{¶4} The prosecutor and Appellant later entered a Crim.R. 11 plea agreement on the OVI and marked lanes charges. Appellant appeared in court on May 17, 2012, to plead no contest to the two criminal charges. The court engaged in a plea colloquy and accepted the change of plea. The court imposed 180 days of jail time, with 166 suspended, and credit was given for 14 days. The court also imposed a fine, a license suspension, probation, and community service. The court entered its judgment on May 17, 2012, and this appeal followed. Appellant has not yet served the remaining jail time on her contempt conviction.

<u>ASSIGNMENTS OF ERROR NOS. 1 AND 3</u>

THE TRIAL COURT ERRED IN FINDING THE APPELLANT GUILTY OF DIRECT CRIMINAL CONTEMPT.

THE TRIAL COURT ERRED, ABUSED ITS DISCRETION AND VIOLATED DEFENDANT'S DUE PROCESS AND CONSTITUTIONAL RIGHTS WHEN IT ORDERED DEFENDANT TO SUBMIT TO AN INFORMAL DRUG TEST.

{¶5} Appellant contends that arriving in court under the influence of methamphetamines, without further evidence that she disobeyed a court order or disrupted court proceedings, cannot be sufficient to support a charge of direct criminal contempt. Appellant also argues that it was improper to base the contempt conviction on a drug test that cannot be justified by any rule or statute and that is not substantiated by the record. Appellant believes that the Fourth Amendment's prohibition against unreasonable searches and seizures should have prevented the court from ordering an immediate drug test and using the instant results of that test to convict her of contempt.

{¶6} Contempt proceedings are typically classified as civil or criminal, based on the purpose of the sanctions imposed. *State v. Kilbane*, 61 Ohio St.2d 201, 205, 400 N.E.2d 386 (1980). If the sanctions are intended to coerce the contemnor to comply with lawful orders of the court, the contempt proceeding is civil. *Id.* at 204-205. On the other hand, if the punishment is punitive in nature and is designed to vindicate the court's authority, the contempt proceeding is criminal. *Id.* "[C]ivil contempts are characterized as violations against the party for whose benefit the

order was made, whereas criminal contempts are most often described as offenses against the dignity or process of the court." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 555, 740 N.E.2d 265 (2001).

**{¶7}** Courts distinguish not only between civil and criminal contempt, but also between indirect and direct contempt. Indirect contempt occurs outside the presence of the court. *In re Lands*, 146 Ohio St. 589, 595, 67 N.E.2d 433 (1946). Direct contempt occurs in the presence of the court and has been defined to include "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988), quoting *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 56, 271 N.E.2d 815 (1971). "Courts, in their sound discretion, have the power to determine the kind and character of conduct which constitutes direct contempt of court." *Kilbane* at paragraph one of the syllabus.

**{¶8}** Direct contempt is defined in R.C. 2705.01 as "misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01; *Kilbane* at 204. It has been said that R.C. 2705.01 "merely restates the inherent power of a court to summarily punish contemptuous acts committed in the presence of the court." *In re Carroll*, 28 Ohio App.3d 6, 8, 501 N.E.2d 1204 (8th Dist.1985), fn. 5.

**{¶9}** A court may summarily punish a person for direct contempt on two conditions: first, the judge must have personal knowledge of the disruptive conduct "acquired by his own observation of the contemptuous conduct." *In re Oliver*, 333

U.S. 257, 275, 68 S.Ct. 499, 92 L.Ed. 682 (1948); R.C. 2705.01. Second, the conduct must pose "an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public" that, if "not instantly suppressed and punished, demoralization of the court's authority will follow." *Oliver* at 275; R.C. 2705.01; *In re Thomas*, 1st Dist. No. C-030429, 2004-Ohio-373. Direct contempt of court occurs in a way so closely related to the court itself that a finding may occur summarily, and the court is not required to provide the contemnor with a hearing. *In re Purola*, 75 Ohio App.3d 306, 596 N.E.2d 1140 (3d Dist.1991).

{¶10} It is apparent from the basic principles of contempt law that a court may punish a person for direct contempt who has threatened or disrupted court proceedings, even if the person did not specifically disobey any particular order issued before or during the proceeding. "[The defendant's] acts of interrupting the proceedings and of leaving the courtroom while the court rendered its decision occurred in the judge's presence and required immediate punishment to vindicate the court's authority." *State v. Stegall*, 1st Dist. Nos. C–110767, C–120112, C–120113, 2012-Ohio-3792, ¶41. A person may also be held in contempt for failure to appear, or even arriving late, at a hearing. R.C. 2705.02; *State v. Moody*, 116 Ohio App.3d 176, 181, 687 N.E.2d 320 (12th Dist.1996). We see no significant distinction between failing to appear at a hearing and voluntarily impairing one's ability to participate in a hearing.

{¶11} Appellant cites two cases in support of her argument that only direct violation of a court order may be punished by direct contempt. In *State v. Dumas*, 7th

Dist. No. 10-MA-50, 2011-Ohio-1003, the defendant was held in direct contempt for "contumacious conduct" and "contemptuous comments" directed at the court. *Id.* at ¶46. This case does not, however, advance Appellant's argument, since we upheld the trial court's direct contempt conviction and the matter did not involve a direct violation of a court order. In *In re Kafantaris*, 7th Dist. 07-CO-28, 2009-Ohio-4814, an attorney was cited with direct criminal contempt for repeatedly disobeying the court's orders regarding evidence, his inappropriate questioning of witnesses, interrupting the flow of the trial, and for an outburst during a murder trial, in front of the jury, that he had a videotape proving that someone else committed the murder. Once again, we upheld the direct contempt conviction, and we fail to understand why Appellant attempts to rely on *In re Kafantaris* to support her arguments on appeal. If Appellant is contending that only the actions of contempt described in these two cases may be punished as direct contempt, she is mistaken. These two cases provide only a few examples of the wide variety of situations that may constitute direct contempt of court. It is generally left to the judge's own discretion to determine what actions are so disruptive that the original proceeding must be stopped and the actions will result, instead in direct contempt proceedings.

{¶12} In Appellant's case, if the trial judge had simply observed her behavior and concluded that she had voluntarily impaired herself to the point that the hearing could not continue, we would undoubtedly affirm the direct contempt citation and penalty. The unusual aspect of this case is that the trial judge, based on no recognized authority, *sua sponte* ordered a drug test to be immediately administered, and then used the results of this drug test rather than Appellant's conduct in court as

the basis to convict her of direct contempt. We must further note that no such test results appear of record. Appellant argued that her mannerisms in court followed her normal behavior pattern, but the judge did not believe her. The judge stated that she would "rely upon the test of this Court" and "we have tested positive here so we are going to have consequences for that now." (Tr., pp. 4, 8). Despite the trial judge's protestations that Appellant could not participate in the hearing due to her impaired state, the hearing continued for a considerable length of time after the judge cited and penalized her for contempt. Thus, the record affirmatively demonstrates that the results of the drug test were the primary, if not the exclusive, basis for the contempt conviction.

{¶13} Had Appellee been able to cite to some statutory or procedural justification for the drug test, or if it had been a condition for granting bail or driving privileges, or had the drug test been taken voluntarily instead of being ordered by the court, we might still be inclined to affirm the trial court's actions. Under the facts of this particular case, however, we find no evidentiary or legal support for this contempt citation.

{¶14} Appellant is correct that the Fourth Amendment prohibits unreasonable searches and seizures, and administering a drug test often raises a variety of Fourth Amendment concerns. *See, e.g., Skinner v. Ry. Labor Executives' Assn.*, 489 U.S. 602, 617, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (the collection and testing of urine constitutes a search and seizure under the Fourth Amendment); *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (withdrawing blood from a suspect to determine the suspect's blood-alcohol content constitutes a

search within the meaning of the Fourth Amendment). A lengthy Fourth Amendment analysis is unnecessary to our conclusion, though, that direct contempt based on the results of drug testing must at least be supported by the record. This is not the type of case in which we presume the regularity of the proceedings, because it is apparent from the record and from oral argument that these particular proceedings were highly irregular. Since there are no test results in the record, and because Appellee could cite to no reasonable explanation supporting the court's right to order an immediate drug test, the trial court erred in exclusively relying on the results of such a test as the factual basis for direct contempt. Appellant's first and third assignments of error have merit, albeit for reasons different than those advanced by Appellant.

## ASSIGNMENTS OF ERROR NOS. 2 AND 4

THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A THIRTY (30) DAYS JAIL SENTENCE FOR A FIRST FINDING OF CONTEMPT.

DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE CUMULATIVE EFFECT OF THE ERRORS AS SET FORTH HEREIN.

{¶15} Appellant argues that the court should not have imposed a 30-day jail term for a first instance of contempt, and that there was cumulative error. Because we have reversed and dismissed the contempt citation, any questions raised by the penalty imposed are now moot. There is no need to determine whether there was any additional cumulative error. Accordingly, these assignments of error are moot.

## Conclusion

**{¶16}** Appellant was convicted and punished for direct criminal contempt after she appeared in court in an impaired condition, but was then ordered to immediately undergo a drug test *sua sponte*, which she apparently failed. The results of the drug test are not in the record, and any legal justification for ordering an immediate drug test as part of direct contempt proceedings was not provided by Appellee. The record indicates that the contempt citation was based exclusively on the results of this drug test, and again, these results cannot be confirmed by the record. Therefore, we conclude that the record does not support the contempt conviction. Appellant's first and third assignments of error are sustained, and her second and fourth assignments of error are dismissed as moot. The judgment of the trial court is reversed and the contempt citation is dismissed.

Donofrio, J., concurs.

Vukovich, J., concurs.